264 So.2d 817 (1972)
Billy W. BRUNSON
v.
STATE of Mississippi.
No. 46790.
Supreme Court of Mississippi.
July 3, 1972.
Clarence E. Morgan, III, Kosciusko, for appellant.
*818 A.F. Summer, Atty. Gen., by Karen Gilfoy, Special Asst. Atty. Gen., Jackson, for appellee.
SMITH, Justice:
Billy Wayne Brunson was convicted of burglary in the Circuit Court of Attala County and sentenced to serve a term of six years in the penitentiary. He appeals.
Brunson was an employee of Southern Electroforming, Inc. The office of that firm was burglarized on the night of August 28, 1971, and certain articles of personal property were stolen, including some of the firm's imprinted and numbered blank checks. The burglary was discovered the following morning by the foreman who reported it to the police. Officers were sent out to investigate.
Apparently as the result of an old foot injury, Brunson had developed a habit of going barefoot. The residual effect of the injury was a certain deformity which caused Brunson to leave a distinctive footprint.
After the burglary was discovered, prints, resembling those of Brunson, were observed near the building, although not in the vicinity of the window through which entry to the building had been effected. The area outside the window was covered with grass.
On the basis of these tracks the officers decided to talk to Brunson. They located him at the home of a friend and asked him if he had any objection to coming down to the City Hall. He had none and drove down in his own car. When he arrived there, he consented to being fingerprinted, although it does not appear that fingerprints played any part in the investigation. The account of an officer as to what next transpired, as it appears in the record, is as follows:
A So, he came on to the City Hall. He followed us on up here and he parked on this side of the street and got out and went in the City Hall and I asked him if he minded me fingerprinting him and he said  no, sir. We went on back there and fingerprinted him and I was talking to him and 
MR. MORGAN:
Your Honor, I object to this. This is getting into my Motion.
THE COURT:
All right. I'll have to ask the jury to go to your room for a few minutes.
(Off the record)
THE COURT:
Let the record show that we are now proceeding out of the presence and hearing of the jury.
MR. EAVES:
Q Mr. Harvey, you stated that you fingerprinted him?
A Fingerprinted him, yes, sir.
Q Did you ask him whether or not he wanted to make any statements?
A No, sir, I was just talking to him. I asked him where he lived and who his folks were and just making conversation with him and directly I asked him where he worked and he said down at the plating place and I said: "Well, Billy, somebody broke in that place last night with a barefooted track down there all around the building". I said: "When were you down there last" and he said "about 11:30". He said: "Yesterday, I went down there and got my check" and I said: "Well, the track was mighty plain to be made there at 11:30 yesterday because there's been several cars in and out of there" and he didn't say anything else for a minute and I said: "Billy, what about that track" and he hesitated a minute and he said: "It was my tracks". He said: "I broke into that place about 3:00 o'clock this morning. I said: "You did?" and he said: "Yes, sir". I said: "What did you get" and he said: "Some money and a pistol". I got *819 through talking to him and I asked him if he would mind going to show us where the money was. I asked him where it was and he said it was at Bobby Card's under the house where he put it. I said: "Well, will you mind going with us and getting it" and he said: "No, sir, I wouldn't." Well, he went on out and got in the car with us and went over there and he got out of the car and went on around there with us and the money was right where he said it was under the pillar of the house. The house was about as high as this from the ground (witness demonstrating) and I told him, I said: "Well, Billy, we'll have to put you in jail for breaking and entering that place down there", and we carried the boy on to jail and that's the whole story.
There was an objection and a motion to exclude, because of the omission to give the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).
It is conceded that prior to making the above confession, Brunson had not been given the warnings required by Miranda.
After this admission of guilt, Brunson gave the officers further details and then led them to the place where he had concealed the articles stolen from the office. There is no suggestion that Brunson's confession was not wholly voluntary, was not entirely free from coercion and from the offer of any inducement.
Later, about 1:00 on the afternoon of the same day, Brunson was interrogated for about 30 minutes by the city attorney, this time admittedly after having been given the Miranda warning. On this occasion, he again confessed. Again there is no hint of coercion nor of any improper inducement. Brunson did testify that in the warnings given him the word "counsel" was used instead of "attorney" and that he did not know what that meant. He testified, however, that he had been given the Miranda warnings in Los Angeles on a former occasion. Later he attempted to hedge by saying that he didn't know about Miranda but in Los Angeles they "gave me my constitutional rights," that he had been there given the "full warning" which included the right to remain silent and to have an attorney present. At this time, Brunson asked the city attorney if he, Brunson, could be released on his own "O.R." The city attorney, not being familiar with the expression, asked Brunson what it meant and was told by Brunson that it meant his "own recognizance."
After an evidentiary hearing, the trial court excluded the first confession, but admitted testimony of an officer that Brunson had directed the officers to the concealed loot, and also admitted the second confession which had been given after Brunson had been given the Miranda warnings.
Brunson offered no defense and bases his appeal squarely upon the proposition that the omission of the Miranda warnings prior to his first admission of guilt (which was excluded) rendered inadmissible the testimony regarding his showing the officers where he had hidden the stolen articles, as well as his second confession, made to the city attorney after the warnings required by Miranda had been given, contending that their admission was reversible error.
In Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the United States Supreme Court said:
We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is `whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' .. . (371 U.S. at 487-488, 83 S.Ct. at 417, 9 L.Ed.2d at 455).
*820 In Dover v. State, 227 So.2d 296 (Miss. 1969) this Court said:
However, Footnote 3 of this same section cites Whitley v. State, 78 Miss. 255, 28 So. 852 (1900), as supporting an exception to the admissibility of evidence obtained by aid of an inadmissible confession to the effect that the thing found, if material and relevant, must be identified by evidence other than the confession. We are of the opinion that the evidence appertaining to the shirt falls within the exception noted above and that if it is to be admitted in evidence, it must be identified by evidence other than the involuntary confession or admissions subsequent thereto... . (227 So.2d at 301).
The testimony of the officers is not harmonious as to whether they themselves considered that Brunson actually had been arrested at the time of his first confession. It should be noted that the exclusion of this confession is the subject of a cross-appeal by the State. We are constrained to hold, however, from the testimony of the officers, considered in connection with all of the attendant facts and circumstances, that Brunson must be considered as having been under arrest at the time.
In dealing with the questions presented by this appeal, we are not at liberty to pass upon the wisdom or unwisdom of the Miranda requirements. We must remain inescapably bound by the so-called Miranda rule laid down by the United States Supreme Court until that Court, in its own good time, shall reexamine the desirability of retaining it.
The admissibility of a confession should be made to depend upon its voluntariness. The trial court should be permitted to inquire into the total circumstances for the purpose of determining the voluntariness of a proffered confession. The effect of Miranda has long since become manifest and a matter of public concern. The United States Congress, as representatives of the people of this country, has recognized the seriousness of the matter and has seen fit to deal with it through the enactment of a public law which appears as 18 U.S.C.A. § 3501, Admissibility of Confessions.
While safeguarding the rights of an accused against coercion, the Act provides, in effect, that a trial court, in determining the admissibility of a confession, may consider the totality of the circumstances under which the confession was made in order to determine the basic question of whether it was or was not voluntary. Unfortunately, this salutary legislation is limited in its effect to the federal courts. Commonwealth v. Ware, 438 Pa. 517, 265 A.2d 790 (1970); People v. Whisenant, 384 Mich. 693, 187 N.W.2d 229 (1971). We are unable to discover or conceive any reason why there should be differing standards in the State and Federal trial courts in this area.
This case presents a striking example of a man who has twice confessed voluntarily, there being no hint or suggestion of coercion, who has proven the truth of his confession by conducting the officers to the place where he had hidden the stolen articles, whose conviction must be reversed because he had confessed his guilt after being asked a few questions and before the Miranda warnings had been given. The unreality of this standard gains emphasis from the fact that he later confessed, again quite voluntarily, and although this time after he had been given the warnings, such confession is also inadmissible. Moreover, in testifying in his own behalf on the motion to exclude, he displayed a remarkable familiarity with criminal procedure and admitted that he had been given the "full constitutional rights" in Los Angeles on a former occasion, including the warning that he had a right to remain silent and to the presence of an attorney. He also asked to be released on his "own recognizance."
Acting, as we must, under the mandate laid down by the United States Supreme *821 Court in Miranda, the judgment of conviction appealed from is reversed and the case remanded.
Affirmed on cross-appeal; reversed and remanded on direct appeal.
All Justices concur except ROBERTSON and SUGG, JJ., who dissent.