467 So.2d 884 (1984)
Jeff YATES
v.
STATE of Mississippi.
No. 54415.
Supreme Court of Mississippi.
December 12, 1984.
Rehearing Denied May 15, 1985.
J. Ronald Parrish, Laurel, for appellant.
Bill Allain, Atty. Gen. by Anita Mathews Stamps, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
BOWLING, Justice, for the Court:
Jeff Yates was tried and convicted of murder in the Circuit Court of the First Judicial District of Jones County and sentenced to serve a term of life imprisonment. The primary issue raised on this appeal is whether or not his confession was made with a knowing and intelligent waiver of his right to counsel.
On July 29, 1981, appellant shot and killed Roger Hollingsworth. Appellant's estranged wife, who had been dating Hollingsworth, arranged this meeting. Appellant came armed with a shotgun. Hollingsworth arrived with Mrs. Yates, who had told him they were going to meet a drug dealer. Hollingsworth was armed with a .357 magnum pistol. Appellant had arrived early at the secluded rural spot, and claiming that Hollingsworth grabbed his pistol upon seeing appellant, shot him in the head with buckshot, killing him.
Appellant put the body in the trunk of Hollingsworth's car and instructed his wife to drive the car to a nearby creek bridge. He threw the body off the bridge into the creek, and told his wife to drive the victim's car into some nearby woods. He took his wife to her home, and then returned to the bridge. He threw the victim's pistol into the creek and then burned the victim's car in the woods.
The body was found two days later floating in the creek. Appellant's estranged wife made a statement to the police, and appellant was arrested on August 4, 1981, at 9 o'clock p.m. and given his Miranda rights. Four hours later, appellant was interrogated, at which time he was given his Miranda rights again, signing an acknowledgment and waiver of those rights. At this time, an attorney hired by appellant's parents to represent him arrived at the jail and requested that the sheriff allow him to meet with his client. The sheriff refused and stated that should appellant request an attorney he would be allowed to *885 meet with him. The interrogating officers did not know of the attorney's presence.
Appellant proceeded to give a detailed statement of the shooting. All of the law enforcement officers present testified that he did not request an attorney, having signed the waiver of rights. Appellant met with his attorney on the morning of August 5, 1981. The following afternoon, appellant was presented with his transcribed statement, given his Miranda rights again, and asked to sign the statement. Appellant signed each page of the confession. The primary issue raised on this appeal is whether or not appellant was deprived of his right to counsel.
In considering this question, it should be noted that appellant claims that he requested an attorney when he first arrived at the jail, approximately 10 p.m. While the six law enforcement officers involved each testified at the suppression hearing that appellant made no request for an attorney, none of them was specifically asked if he requested an attorney when he arrived at the jail. Their testimony reflects that he was given his Miranda rights upon arrest and before giving the statement, at which time he signed an acknowledgement and waiver of rights. Appellant did not know there was an attorney hired to represent him and present at the jail at the time of the interrogation. He contends on appeal that the fact that he was not notified of the presence of counsel deprived him of his Sixth Amendment right to counsel.
There are essentially three lines of cases dealing with this area of denial of access to counsel. The first of these is the so-called New York rule. Simply stated, once an attorney enters into the proceeding, the police may not question the defendant in the absence of counsel unless there is a waiver of the right to counsel in the presence of that attorney. People v. Hobson, 39 N.Y.2d 479, 384 N.Y.S.2d 419, 348 N.E.2d 894 (1976). However, the New York rule can be readily discounted in light of Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), where the United States Supreme Court ruled that the accused can validly waive his right to counsel outside the presence of the attorney.
Another line of authority imposes upon the police who are notified of the presence, either by phone or in person, of the defendant's attorney, the obligation to inform the defendant of the fact before the defendant's waiver of right to counsel can be considered knowing and voluntary. Commonwealth v. McKenna, 355 Mass. 313, 244 N.E.2d 560 (1969). This rationale is shared by several states, including Delaware, Louisiana, Oregon, Illinois and Washington.
Another line of authority is represented by State v. Burbine, 451 A.2d 22 (R.I. 1982), which holds that the accused can knowingly and intelligently waive his right to counsel despite the fact that the police have not informed him of the presence of counsel. This view, likewise shared by several jurisdictions, both state and federal, holds that the Miranda rights of the accused person may not be extended to the point that the police are obligated to inform the accused of the presence of an attorney where the accused does not request one. Since the defendant has already been advised of his right to obtain counsel, as well as his right to not make a statement before speaking with counsel, his constitutional privileges should not hinge upon how quickly an attorney appears at or telephones the jail.
This question has been addressed in Mississippi in several cases over the years. This Court has held the state has a burden to prove beyond a reasonable doubt a knowing and intelligent waiver when a custodial incriminating statement is made without the advice or presence of counsel, notwithstanding the fact that defendant has already been advised of his Miranda rights by authorities. Neal v. State, 451 So.2d 743 (Miss. 1984); (retarded defendant confessed to murder without advice of counsel). The prevailing rule in Mississippi, as in most other jurisdictions, is that the appellate court should consider the totality of circumstances in passing on such questions. *886 Depreo v. State, 407 So.2d 102 (Miss. 1981). Thus, while there is a split of authority on this question, there is seemingly a further split within the separate jurisdictions because the cases are decided on their facts. Cf. United States v. Guido, 704 F.2d 675 (C.A. 2 N.Y. 1983) (confession admitted where there is no evidence that officers delayed defendant's request for access to an attorney hoping he might incriminate himself); People v. Winston, 106 Ill. App.3d 673, 62 Ill.Dec. 355, 435 N.E.2d 1327 (1982) (overruled on other grounds People v. DeSimone, 108 Ill. App.3d 1015, 64 Ill.Dec. 503, 439 N.E.2d 1311 (1982) (confession admitted where the defendant's inquiry into the procedure of appointment of a public defender did not exhibit a present desire for an attorney to the point that all questioning should have been discontinued); State v. Harper, 430 So.2d 627 (La. 1983) (confession admitted where defendant after initial request for attorney reinitiated contact with police). Mississippi has dealt with the denial of counsel issue on many occasions. In Holifield v. State, 275 So.2d 851 (Miss. 1973), this Court stated that:
Being mindful of Miranda, we hold as follows. The state is not required to provide instant counsel to one suspected of crime before he can speak. However, before interrogating a suspect in custody, the state or its representatives must tell the suspect of his right not to speak without counsel. Should such suspected person state that he desires the services of a lawyer at any time, then such must be furnished him prior to interrogation. Even under those circumstances we hold that it would not be necessary to provide legal counsel "then and there," but before interrogation ensues. Appellant herein was advised of his rights prior to confession. There was substantial evidence to the effect that he, of his own volition, chose to and did intelligently waive his right to the presence and advice of counsel. His confession was upon the record properly admitted into evidence. (275 So.2d at 855)
Similarly, in Evans v. State, 275 So.2d 83, 84 (Miss. 1974), this Court quoted Mayzak v. U.S. 402 F.2d 152 (5th Cir.1968), to the effect that Miranda rights do not require that attorneys be produced on call, nor do they require the interrogating officer to declare his personal and immediate power to summon an attorney. See also Lanier v. State, 450 So.2d 69 (Miss. 1984); Hall v. State, 427 So.2d 957 (Miss. 1983); Ramseur v. State, 368 So.2d 842 (Miss. 1979); Jordan v. State, 365 So.2d 1198 (Miss. 1979); Abston v. State, 361 So.2d 1384 (Miss. 1978); Harrell v. State, 357 So.2d 643 (Miss. 1978); Dotson v. State, 312 So.2d 444 (Miss. 1975). The case sub judice, however, will be decided on another factual point. After several Miranda warnings, after a signed waiver of rights, after appellant confessed, and after appellant consulted with his attorney the next morning, he was again given his rights, including access to an attorney and presented with the confession to sign. Appellant signed each of the twenty typewritten pages of the confession. While appellant was young, eighteen or nineteen years old, and had limited education, he was not mentally deficient and had consulted with his attorney before signing the confession. Thus, in considering the totality of the circumstances of this case, especially the fact that the confession was signed after appellant had met with his attorney, we find that it was proper for the lower court not to suppress this confession. The situation would be entirely different had the confession not been reiterated and signed after appellant conferred with his attorney. Even though he was given all his rights, including having an attorney present at the time the oral statement was taped, the fact that an attorney, sent by his parents, was on the same floor of the building without the knowledge of appellant tainted the confession orally given. This taint was removed because of the hereinbefore related events, especially consultation with the attorney. We are forced, however, to hold that he waived that error when, after conferring with his attorney, he was again given his Miranda rights, including the right to an attorney, *887 but chose to waive all those rights and reaffirm the confession by signing it.
At this point it is necessary to address another decision of this Court. In Brunson v. State, 264 So.2d 817 (Miss. 1972), this Court dealt with an early Miranda issue. There, the defendant had been arrested and confessed before having been given his Miranda rights. He also told the police officers where he had hidden the stolen goods and led them to that place. Later that afternoon he was given the Miranda warnings and again confessed. An evidentiary hearing was held wherein the trial court excluded the first confession but admitted the testimony of an officer that the defendant had directed them to concealed loot. The trial court also admitted the second confession. In considering the case, this Court noted that at that point the state court was not allowed to consider the totality of circumstances in deciding on the admissibility of the confession. Of course, it has since been well established that this Court may consider the totality of circumstances in passing upon the issue of admissibility of a confession. The Court in Brunson specifically held that the conviction must be reversed because he confessed before his Miranda warnings had been given. The testimony of the officer with regard to the defendant leading them to the stolen goods, as well as the second confession were inadmissible since they were tainted by the first non-Miranda confession. The Court reluctantly reversed that case, deferring to the Miranda decision. Also cited was Wong Sun v. U.S., 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), to the effect that all evidence obtained by virtue of illegal actions of the police is not "fruit of the poisonous tree". The test is "whether granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality instead of by means sufficiently distinguishable to be purged of the primary taint." (371 U.S. 487, 488, 83 S.Ct. 417)
Brunson is distinguishable from the case at bar, in that all subsequent evidence was suppressed after it was established that the defendant confessed before being given his Miranda rights. This included the second Miranda confession, it being unduly influenced by his first illegal confession. Brunson was an early Miranda case for this Court. Now, with the Court having the ability to consider the totality of circumstances underlying the evidence, the Wong Sun test becomes more meaningful. This Court has held that the fruit of the poisonous tree doctrine is defeated where the confession is judged admissible. Wiley v. State, 449 So.2d 756 (Miss. 1984); Hall v. State, 427 So.2d 957, 958 (Miss. 1982). Of course, in the case at bar, this Court is affirming the lower court's finding that the confession is admissible; as such, it is not fruit of the poisonous tree. In light of the numerous developments in case law dealing with Miranda rights, this Court finds Brunson to be outdated and, as such, overrules that case. Clearly in the case at bar the appellant's signing of his confession after consulting with his attorney sufficiently purged the confession of any primary taint.
The other assignments of error have been considered and are found to be without merit. After carefully considering the facts of the case, we affirm the conviction of murder and the life sentence.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, J., concur.
DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., dissent.
SULLIVAN, Justice, dissenting:
Two issues arise in this case: (1) Whether the sheriff's refusal to inform Yates that his attorney was actually present and waiting to talk with him rendered his oral confession inadmissible, despite Miranda warnings, and, (2) Whether Yates' action in signing the written transcript of his confession after consulting with his attorney purged the confession of its primary taint. I respectfully dissent from the majority *888 opinion's treatment of the first issue because it does not explain the legal basis for this "taint" or its effect upon the oral confession and it fails to announce any rule of law to guide the conduct of law enforcement officials so that the "taint" might be avoided in future cases. I also dissent from the conclusion of the majority opinion that Yates' subsequent acts waived any error caused by the sheriff's conduct prior to the oral confession.

I.
I question the meaning of the following conclusion in the majority opinion:
Even though he was given all his rights, including having an attorney present at the time the oral confession was taped, the fact that an attorney, sent by his parents, was on the same floor of the building without the knowledge of appellant tainted the confession orally given. (emphasis added)
Three questions come to mind. What does it mean to say that Yates' oral confession was "tainted"? Why did Yates not know of the presence of his attorney in a nearby part of the jailhouse? What effect does Yates' ignorance of his attorney's presence have upon his oral confession?
The term "taint" derives from the rule in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), for determining whether or not evidence obtained by virtue of illegal police action is inadmissible as "fruit of the poisonous tree." The rule states:
... whether, granting the establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality instead of by means sufficiently distinguishable to be purged of the primary taint.
371 U.S. at 488, 83 S.Ct. at 417, 9 L.Ed.2d at 445. The rule in Wong Sun illustrates the fact that a "tainted" confession is not merely soiled; it is one which has been obtained by exploitation of illegal police action. Unless subsequent events "purge the confession of its primary taint," the confession is inadmissible. The majority's failure to acknowledge explicitly that some illegal police conduct attended the elicitation of Yates' oral confession is inexplicable since it admits as much by use of the word "taint". There can be no taint without a primary illegality; the two are synonymous under Wong Sun.
The reason that Yates was unaware that his attorney was present was because the sheriff first denied his attorney permission to see his client and then did not tell Yates that his lawyer was present on the numerous times the sheriff entered the interrogation room during the course of questioning. At the time the lawyer arrived, Yates was not being booked, fingerprinted, photographed, or put through any other administrative processing. He was in his cell.[1] The sheriff obviously had no reason to prevent Yates from conferring with his lawyer except to isolate Yates from anyone who might make the investigator's job harder.
The question raised but left unanswered by the majority opinion is not whether the sheriff's actions were unlawful, since it concedes that the oral confession was "tainted", but, what law did the sheriff violate that tainted Yates' oral confession?
First it must be noted that Yates had not been formally charged with the murder of Hollingsworth until after the transcript of the oral confession had been signed. Whatever constitutional basis exists for concluding that Yates' oral confession was "tainted," it clearly does not arise under *889 the Sixth Amendment right to counsel in criminal prosecutions. As pointed out in Cannaday v. State, 455 So.2d 713 (Miss. 1984), the Sixth Amendment right to counsel attaches when:
... adversary proceedings have been initiated, whether by way of formal charge, preliminary hearing, indictment, information or arraignment. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972)
455 So.2d at 722. The conduct which Yates contends was a violation of his rights occurred about 1 o'clock a.m. on the morning of August 5, 1981. Yates was not arraigned until the afternoon of August 6, 1981. Since the Sixth Amendment right to counsel attaches only after formal charges are filed, Yates' incriminating statement, if protected at all, is protected by the Fifth Amendment, rather than the Sixth. U.S. v. Guido, 704 F.2d 675, 676 (2d Cir.1983). Specifically, the basis in law for any violation of Yates' rights which "tainted" his oral confession is the landmark case of Miranda v. Arizona, 384 U.S. 436, 86 S.C. 1602, 16 L.Ed.2d 694 (1966), which established certain procedures to safeguard the Fifth Amendment privilege against compelled self-incrimination in "... incommunicado interrogations in a police dominated atmosphere." Id. at 445, 86 S.Ct. at 1612, 16 L.Ed.2d at 707. Included within these so-called Miranda rights is the right to assistance of counsel.
A suspect in custody who is apprised of his Miranda rights may choose to waive these rights, including the right to assistance of counsel. The crucial point is that it must be a knowing and intelligent choice and voluntary in the sense of not being coerced. When the state claims waiver, it has the burden to show beyond a reasonable doubt that the accused knowingly and intelligently relinquished a known right or privilege. Brewer v. Williams, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424, 439 (1977). Determining whether Yates made a knowing and intelligent waiver of his right to counsel under Miranda requires examination of the totality of the circumstances. Depreo v. State, 407 So.2d 102, 105 (Miss. 1981).
The majority opinion summarizes the three lines of authority on the effect upon a confession of a police officer's refusal to inform a suspect in custody that his attorney is present and wishes to speak to him. It correctly refuses to adopt the New York rule, inasmuch as the U.S. Supreme Court in Brewer v. Williams, supra, as well as this Court in Weed v. State, 406 So.2d 24 (Miss. 1981), have held that an accused need not notify his attorney in order to effectively waive any right to counsel.
The majority opinion's recognition that Yates' oral confession was "tainted" means that the rule in Burbine v. State, 451 Atl.2d 22 (R.I. 1982), must necessarily have been rejected, for the Burbine court found no violation of a suspect's Miranda rights, and hence no taint upon the confession, from the police's failure to tell a suspect that his lawyer is present. The majority opinion, by recognizing that Yates' oral confession was "tainted", has decided, contrary to Burbine, that an accused's constitutional rights can and do hinge upon how quickly an attorney arrives at the jailhouse, because the majority acknowledges that a violation of Yates' rights occurred when the sheriff refused to inform him that his attorney had arrived at the jail and wanted to see him.
Having expressly rejected the New York rule and concluded, contrary to the Burbine line of cases, that Yates' oral confession was "tainted" by the sheriff's withholding from him the fact that his lawyer was present and wanted to talk with him, the majority then gives no explanation whatsoever of the legal basis or effect of this elusive "taint".
The legal basis of this "taint" or illegal police conduct, under the majority opinion, cannot be either the New York rule or the Burbine rule. It must necessarily be some formulation of the intermediate line of cases, the most recent of which, Weber v. State, 457 A.2d 674 (Del. 1983), states:
[I]f prior to or during custodial interrogation, and unknown to the suspect, a *890 specifically retained or properly designated lawyer is actually present at a police station seeking an opportunity to render legal advice or assistance to the suspect, and the police intentionally or negligently failed to inform the suspect of that fact, then any statement obtained after the police themselves know of the attorney's efforts to assist the suspect, or any evidence derived from any such statement, is not admissible on any theory that the suspect intelligently and knowingly waived his right to remain silent and his right to counsel as established by Miranda.

457 A.2d at 686. The above cited intermediate rule differs from the New York rule in that after being fully informed of the presence of counsel, a suspect may knowingly and intelligently waive his rights without consulting his attorney. This conforms with the decisions in Brewer v. Williams and Weed v. State that an accused may, without notice to counsel, waive his right to counsel. All that the intermediate rule requires is that a suspect must be fully informed of the actual presence and availability of counsel, who seeks to confer with him, before any waiver of a right to remain silent or a right to counsel, as established by Miranda, can be considered knowing and intelligent. Weber v. State, 457 A.2d at 686; State v. Matthews, 408 So.2d 1274, 1278 (La. 1982); People v. Smith, 93 Ill.2d 179, 66 Ill.Dec. 412, 442 N.E.2d 1325, 1329 (1982); State v. Haynes, 288 Or. 59, 602 P.2d 272, 278 (1979); State v. Jones, 19 Wash. App. 850, 578 P.2d 71, 73 (1978); Commonwealth v. McKenna, 355 Mass. 313, 244 N.E.2d 560 (1969).
This rule of law does not impose any burden upon the state of the sort found in the cases cited by the majority, Holifield v. State, 275 So.2d 851 (Miss. 1973), and Evans v. State, 275 So.2d 83, 84 (Miss. 1974), in which we declined to require police, once a suspect has requested a lawyer, to produce "instant counsel", or immediately summon a lawyer before interrogation ensues. We acknowledged in those cases that it would be beyond the practical abilities of law enforcement officials to contact and persuade an attorney to immediately present himself at the station house at whatever time of the day or night that a suspect requests a lawyer. However, when a lawyer arrives at the police station at the request of the suspect or his relatives, through no effort by the police, there is nothing in Holifield v. State, supra, or Evans v. State, supra, which authorizes police to withhold from the suspect the benefit of reasonable consultation with his lawyer. The fact that a prisoner does not know that an attorney has been retained to represent him does not authorize government officials to ignore his constitutional right to such counsel. State v. Matthews, 408 So.2d at 1278-79 (La. 1982); State v. Jackson, 303 So.2d 734, 736 (La. 1974); Weber v. State, 457 A.2d at 686 (Del. 1983).
Lest this rule be considered an unfounded extension of the Miranda decision, I would note that in Miranda v. Arizona, the court discussed Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), in which the police refused to admit counsel during a pre-indictment interrogation after the defendant initially requested counsel. The Miranda court stated:
The police also prevented the attorney from consulting with his client. Independent of any other constitutional proscription, this action constitutes a violation of the Sixth Amendment right to the assistance of counsel and excludes any statement obtained in its wake.
384 U.S. at 465-66, n. 35, 86 S.Ct. 1623 n. 35, 16 L.Ed.2d 718-19 n. 35. In looking back to Escobedo the Supreme Court has viewed it as a decision that protects the Fifth Amendment privilege against compelled self-incrimination, rather than to insure the Sixth Amendment right to counsel. Kirby v. Illinois, 406 U.S. at 689, 92 S.Ct. at 1882, 32 L.Ed.2d at 417 (1972). That Escobedo was neither overruled nor subsumed by the Miranda decision is illustrated by Hance v. Zant, 696 F.2d 940, (11th Cir.1983), a post-Miranda case in which the Eleventh Circuit considered whether a violation of Escobedo occurred and concluded that the proof did not show that the suspect *891 either requested an attorney or that the attorney was denied access to the suspect. Likewise, in Smith v. Estelle, 527 F.2d 430 (5th Cir.1976), the Fifth Circuit noted "Miranda evolved from Escobedo, reexamining, reaffirming, and extending its holding." Id. at 433. The Fifth Circuit in Smith required that further post-conviction proceedings be held to determine whether the violation of the defendant's Escobedo right to counsel tainted his subsequent trial testimony.
The majority opinion's acknowledgment that Yates' oral confession was "tainted" can only be premised upon a conclusion that the sheriff had the duty to inform Yates of his attorney's presence at the jailhouse. I conclude that the majority opinion's use of the word "taint" in this case is inadequate to indicate that we are adopting an intermediate rule requiring police to inform in-custody suspects of their attorney's presence in order that any subsequent confession may be rendered admissible on the theory that the suspect knowingly and intelligently waived his right to remain silent and his right to counsel as established by Miranda. For the benefit of law enforcement officials and criminal defense lawyers alike, I would simply state that application of the intermediate rule requires that if, prior to or during custodial interrogation and unknown to the suspect, a specifically retained or appointed attorney presents himself at the police station or other site of interrogation seeking to assist or render legal advice to the suspect, the police must inform the suspect of that fact to allow the suspect to choose whether or not he wishes to consult with his lawyer. If the suspect decides that he does not desire the aid of his lawyer, then interrogation may resume. If the suspect wishes to consult with his lawyer, then interrogation must cease while the consultation takes place.
If the police intentionally or negligently fail to inform the suspect that his attorney is present, then any statement obtained thereafter or any evidence derived from such statement is not admissible on the theory that the suspect intelligently and knowingly waived his right to remain silent and to assistance of counsel as established by Miranda.
Applying the rule to the facts of this case, I conclude that the sheriff's failure to inform Yates that his attorney was actually present violates Miranda as interpreted in the intermediate rule of law set forth above. Since the oral confession was obtained by exploitation of the sheriff's unlawful conduct, I would rule that it was inadmissible, or, to use the majority's phrase, "tainted" by the violation of Yates' rights under Miranda.
No resort to the totality of the circumstances or to concepts of "waiver" permit the majority to hold that both the oral confession and the written, signed transcript are admissible. In Montecarlo Jones v. State, 461 So.2d 686, we found that the portions of Jones' videotaped confession which followed the interrogators' refusal to honor his requests not to discuss whether or not he acted alone violated Jones' Miranda right to cut off interrogation as to a particular subject matter. (at pp. 697 - 699). We expressly rejected the notion that Jones waived that error when he took the stand at trial to overcome the impact of the illegally obtained testimony. (at pp. 701, 706 - 709).
Thus when the majority opinion concedes that Yates' oral confession was "tainted" by the sheriff's violation of his right to be apprised of the presence of counsel, it must rule that the oral confession is inadmissible. Having planted the poisonous tree, the majority must demonstrate that intervening circumstances have dissipated the taint of the primary illegality for the subsequently signed confession to not constitute fruit of the poisonous tree.
The majority opinion's failure to explain the meaning of the "taint" to which it alludes, and its true effect upon the oral confession, requires that I dissent. Moreover, the need for a clear explanation of what this Court effectively concludes is a violation of Yates' Miranda rights, which the majority opinion fails to provide, requires *892 that I set out the legal basis and a statement of the rule for the benefit of the law enforcement community and criminal defense attorneys. This is necessary so that, on the next case that raises this issue, the police can understand what is required of them. The next case may not involve an accused who signs the transcript of his illegally obtained oral confession. As the majority notes, that would be an entirely different situation.

II.
The second question facing this Court is whether Yates' written transcript was tainted by his unconstitutionally obtained oral statement, so that it would be inadmissible as "fruit of the poisonous tree". Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). A statement is inadmissible if it was obtained by the exploitation of a prior, illegally-obtained statement. Brown v. Illinois, 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975). In order for this causal chain to be severed, the intervening events must demonstrate that the second confession was sufficiently an act of free will to purge the primary taint. Brown v. Illinois, Id. In Holleman v. Duckworth, 700 F.2d 391, 396 (7th Cir.1983), the court listed several factors important in determining whether a prior statement tainted a later one, including, (1) the break in time between the two statements, (2) whether the same conditions that rendered the first statement inadmissible persisted, (3) whether the defendant was given renewed Miranda warnings, and (4) whether the defendant initiated the contact with the police before making his later confession. Id. at 396.
The majority opinion notes that the fruit of the poisonous tree doctrine is defeated when the confession is judged admissible. The cases cited by the majority, Wiley v. State, 449 So.2d 756 (Miss. 1984), and Hall v. State, 427 So.2d 957, 958 (Miss. 1982), are in direct contrast to the case at bar. In Wiley, supra, the appellant's claim that he asked for an attorney during interrogation was directly contradicted by all the officers who were present. This Court found that there was no violation of Wiley's Miranda rights and since his confession was admissible the evidence found by the officers as a result of the confession was likewise admissible. 449 So.2d at 759-60. In Hall, supra, this Court was presented with no contention whatsoever that the appellant's Miranda rights had been violated in the course of his interrogation. His sole theory for excluding the confession was that it was the product of an illegal arrest. This Court noted that no factual issue regarding the voluntariness of his confession was raised and, applying the standards of Brown v. Illinois, the Court concluded that:
The confession was sufficiently an act of free will so that the primary taint of the illegal arrest, if, indeed there was one, was effectively purged.
427 So.2d at 961.
In the case at bar, unlike Hall v. State, the defendant's rights under Miranda were violated by the sheriff's refusal to tell him that his attorney was there. Unlike Wiley v. State, the sheriff admitted to the illegal conduct. It inescapably follows that this Court must apply the analysis of Wong Sun v. United States to determine if the typed transcript which Yates signed is sufficiently distinguishable from the illegally obtained oral confession so as to purge the transcript of its primary taint.
The majority opinion relies upon the fact that Yates was again given his Miranda rights when he was brought in to sign the confession, that he was afforded an opportunity to consult with counsel after the oral confession had been given, and that he signed the confession. While these factors are relevant, I conclude that the taint of the oral confession carried over to the written statement for the following reasons. First, only a matter of hours elapsed between Yates' interrogation at 1:30 a.m. on August 5th, and when he was brought in to sign the transcript of the confession later in the afternoon of August 5th. Next, when Yates was brought in the second time *893 he was not confronting a second interrogation; he was simply afforded the opportunity to sign a written version of his illegal oral confession, with the assurance that it would be offered against him whether he signed it or not. Third, Yates remained in police custody and subject to police control, and thus did not voluntarily come forward to sign his confession. Finding no significant distinction between the written statement which Yates signed at the request of police and the oral confession obtained by refusing to tell Yates that his attorney was present, I conclude that the written statement is not purged of the primary taint and should likewise be inadmissible against Yates. Holleman v. Duckworth, 700 F.2d 391 (7th Cir.1983).
In conclusion, to allow law enforcement officers to interrogate and obtain a confession from a suspect without informing him of his counsel's availability while simultaneously denying his counsel reasonable access, would promote those "evils" of isolation and deception inherent in the interrogation process which Miranda condemned. I cannot agree to a result whereby the procedural safeguards required by Miranda to protect the Fifth Amendment privilege against self-incrimination would be reduced to a meaningless ritual.
The majority's evaluation of the totality of the circumstances all but ignores a plain violation of Yates' right to counsel under Miranda and refuses to analyze Yates' subsequent actions under the Wong Sun rule to determine whether the signed confession is nonetheless admissible. How resort to this sort of analysis makes Wong Sun, or Miranda, more meaningful escapes me entirely; it clearly seems to make those cases less meaningful.
In my view, Brunson v. State, 264 So.2d 817 (Miss. 1972), correctly stated the law and had to be overruled by the majority for this result to be reached. No matter how reluctantly Justice Smith may have stated the principles of Miranda and Wong Sun in Brunson, he correctly applied both. While I applaud the candor with which the majority overruled Brunson, in my view in doing so they attempt to overrule Miranda, in effect if not in fact.
DAN M. LEE, PRATHER and ROBERTSON, JJ., join in this dissent.
NOTES
[1] Sheriff Chancellor's testimony bears this out:

(Yates' lawyer):
Q Was [Yates] taken out of there any time during the night?
(Chancellor):
A Yes, sir.
Q To where?
A To the deputy room.
Q All right, what time, in relation to when I was there?
A Probably twenty to thirty minutes. I'm not sure about the time.
Q Twenty or thirty minutes after I was there?
A Yes, sir.
(Tr. 88)