517 So.2d 1383 (1987)
David REUBEN, Jr.
v.
STATE of Mississippi.
No. 57326.
Supreme Court of Mississippi.
December 2, 1987.
*1384 Alvin M. Binder, Lisa B. Milner, A. Randall Harris, Binder, Milner & Milner, Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Charles T. Rubisoff, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and ANDERSON, JJ.
SULLIVAN, Justice, for the Court:
On October 21, 1985, David Reuben, Jr. was convicted of murder by the Circuit Court of Rankin County. From his conviction and sentence of life imprisonment, he perfects the instant appeal and assigns the following as error:
I. The lower court erred in overruling appellant's post trial motions for a judgment notwithstanding the verdict, or in the alternative for a new trial based on discovery violations of the State;
II. The verdict of guilty was clearly contrary to the overwhelming weight of the evidence; and
III. The lower court erred in admitting into evidence the confession of the appellant in violation of his Fifth and Sixth Amendments rights.
On August 4, 1985, Michael Tucker, a mechanic, was requested by a Pelahatchie Police Officer to make a road call. Tucker and his friend, David Reuben, Jr., drove together to repair a disabled car which had been driven by two ladies.
After the automobile had been fixed and Tucker and Reuben had been paid, but while they were still on the side of the road, Terry White, William Prestage, and Billy Lee Prestage drove past the scene and parked their car on the opposite shoulder. William Prestage approached Tucker's vehicle in which Reuben and Tucker were seated and asked Reuben if he were trying to get smart with him. William Prestage then struck Reuben in the face. The blow broke Reuben's glasses and cut his face.
Reuben drove away from the scene but after a short distance stopped the car and let Tucker drive. Tucker immediately drove to the Pelahatchie Police Station to file a complaint against Prestage. When the police officers were told what had happened to Reuben, "they (the police officers) laughed about it for a while." Buddy Myers, the Chief of Police in Pelahatchie, was distantly related to William Prestage. No apparent effort was made by the Pelahatchie Police Department to act upon the complaint. Reuben and Tucker left the station.
Later that night Prestage and Terry White came into the vicinity of Reuben's house on Dillard Avenue "talking loud." White and William Prestage pulled up in front of Lonnie McNair's "wash house and store" to purchase a six pack of beer. They parked approximately 100 yards from Reuben's house. While Prestage was inside the store White moved over to the driver's side of the car and Prestage returned with a six pack and got in on the passenger's side of the automobile.
According to Reuben, he feared for the safety of his wife, so he got his knife and went to wound Prestage in order to scare him off. According to the testimony of White, Reuben approached the car, looked in the window, and stabbed Prestage.
White made two separate statements concerning what Prestage said while they were in the car. At trial he claimed that Prestage told him "to get out of there." He told the police that what Prestage said was "To run over that son of a bitch." White attempts to explain the discrepancy *1385 by saying that both statements meant the same thing.
White drove away from the scene of the stabbing with Prestage's body in the car. He persuaded his fourteen year old brother to drive the car with Prestage's body in it to the police station.
Chief Myers arrived at the police station after the body of William Prestage had been brought in. Terry White had told the police that David Reuben, Jr., was the one who had stabbed Prestage. Officer Dodd asked the suspect's father, David Reuben, Sr., if he would bring David Reuben, Jr., to the police station which he did.
Officer Dodd arrested David Reuben, Jr., and gave him Miranda warnings. At this time Reuben, Sr., stopped the police questioning of his son by stating that his son would make no further statements until an attorney was present.
Chief Myers stopped his questioning, but when Officer Dodd asked David Reuben, Sr., to take him to get the stabbing weapon, Myers continued his questioning and at this point David Reuben, Jr., gave an oral statement. Myers told Reuben that he would come to the jail tomorrow and reduce the statement to writing. While the statements were being taken, a crowd had gathered outside the Pelahatchie Police Station. Since the Pelahatchie Jail has been condemned, David Reuben, Jr., was transferred to the jail in Brandon after giving an oral statement.
On August 5, 1985, the next morning, Chief Myers went to Brandon and gave Reuben his Miranda warnings and had Reuben reduce to writing the statement which he had given Chief Myers in Pelahatchie the night before.
At the suppression hearing, the trial judge found the oral statements made at the police station in Pelahatchie were obtained through a violation of Reuben's Miranda rights and that the oral statement was involuntary. However, the trial judge found that the written statement of August 5, 1985, was admissible under the "totality of the circumstances" test set out in Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). From this finding Reuben appeals.
On September 11, 1985, Reuben's attorney filed a discovery motion pursuant to Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice. In this motion Reuben's attorney sought, among other things, the names and addresses of the State's witnesses in chief. Reuben was not furnished with the name of the State's primary witness, Terry White, until Friday, October 18, three days before the trial. Reuben argues that the trial court's failure to grant his Motion for JNOV and New Trial based upon this discovery violation and the denial of the continuance was erroneous and should be reversed.
Reuben also argues that the verdict entered against him was contrary to the overwhelming weight of the evidence.

I.

THE LOWER COURT ERRED IN OVERRULING APPELLANT'S POST TRIAL MOTIONS FOR A JUDGMENT NOTWITHSTANDING THE VERDICT, OR IN THE ALTERNATIVE FOR A NEW TRIAL BASED ON DISCOVERY VIOLATIONS OF THE STATE.
Reuben contends that the failure of the State to disclose the name of Terry White, the State's primary witness, until three days before the trial violated Rule 4.06. Reuben raised this discovery violation and the trial court's denial of his motion for continuance in his Motion for JNOV and New Trial. The State responds with the argument that no discovery violation occurred or if there was one, it was procedurally barred by the absence of a timely objection and further, that if this was error it was harmless.
In denying Reuben's post-trial motions, the trial judge noted that the defendant took no formal action to compel earlier discovery. Reuben filed a motion which, under Rule 4.06, was sufficient to impose upon the State the duty of disclosing the names and addresses of all witnesses that the State intended to call during their case-in-chief. It is well settled that "a written *1386 request made by the defense is all that is necessary to impose upon the prosecution the obligation to make discovery  and to make discovery seasonably." Foster v. State, 484 So.2d 1009, 1011 (Miss. 1986), citing Morris v. State, 436 So.2d 1381, 1387 (Miss. 1983). Recently in Stewart v. State, 512 So.2d 889 (Miss. 1987), Presiding Justice Dan Lee, speaking for this Court said, "A request is all that is necessary." Stewart, at 891.
Although his motion was filed more than one month before the trial, the prosecution did not disclose the name of Terry White until three days before the trial. In Stewart, supra, we stated, "Discovery, to be sufficient, must be made at a time far enough in advance of trial to give the defense `a meaningful opportunity' to make use of it." Stewart, at 892. See also, Turner v. State, 501 So.2d 350 (Miss. 1987); Gray v. State, 487 So.2d 1304 (Miss. 1986); Henry v. State, 484 So.2d 1012 (Miss. 1986); and McKinney v. State, 482 So.2d 1129 (Miss. 1986).
The question of whether defendant had a reasonable opportunity to prepare to confront the State's evidence at trial depends upon the particular facts and circumstances of each case. In this case the defendant learned the identity of the State's primary witness on Friday before the trial was to begin on Monday. This placed the defense attorney in the position of trying to locate and interview the State's primary witness on the weekend before the trial was to start.
White was well known to the State far in advance of the trial. On the night of the stabbing, August 4, he had given the police a statement regarding the events in question. The record does not indicate any reason why the prosecution withheld this information until the eleventh hour, although by doing so, they obviously gained a tactical advantage at Reuben's expense.
The delay in providing this information cannot be deemed harmless. White was a less than ideal witness. He contradicted his prior statement and gave contradictory testimony while on the witness stand. However, he was the State's only witness who had any knowledge of the events in question. By withholding his identity the State restricted the defense's access to him and limited the defense's ability to prepare for his testimony.
We addressed the problem of belated discovery in Foster v. State, 484 So.2d 1009 (Miss. 1986), and stated:
Where the state is tardy in furnishing discovery which it was obligated to disclose, the defendant is entitled upon request to a continuance postponement of the proceedings reasonable under the circumstances. Henry v. State, 484 So.2d 1012, 1014 (Miss. 1986); McKinney v. State, 482 So.2d 1129, 1131 (Miss. 1986); Cabello v. State, 471 So.2d 332, 343 (Miss. 1985); Box v. State, 437 So.2d 19, 26 (Miss. 1983) (Robertson, J. concurring). By no means does this mean invariably that the defendant will be entitled to a continuance until the next term of court. There will no doubt be cases where postponement of a day or two, or in some cases even an hour or two, will suffice. Because the trial judge refused to grant Foster a reasonable continuance under the circumstances, this conviction must be reversed and the case remanded for a new trial.
Foster, 484 So.2d at 1011.
See also, Stewart v. State, 512 So.2d 889 (Miss. 1987).
Rule 4.06 requires that the prosecution furnish the defendant with the names and addresses of all of its witnesses in chief, it also requires that they do so sufficiently in advance of trial to provide the defendant with a reasonable opportunity to interview the witnesses. See Stewart v. State, supra. The State possessed the requested information and had notice of their duty to provide it to the defense. Their failure to provide the defense with the name of the witness until three days before trial was a violation of Rule 4.06 since the defense was not afforded a reasonable opportunity to locate and intereview the witness. This is particularly true when the delay placed the defense attorney in the unenviable position of having to track down the State's star witness between Friday night and Monday *1387 morning, in addition to having to prepare for the rest of the murder trial to commence on that same Monday. Such a delay by the prosecution in complying with Rule 4.06 is inexcusable. When coupled with the court's failure to grant Reuben's motion for a continuance when White was presented as a witness, this assignment has merit and constitutes reversible error.

II.

THE VERDICT OF GUILTY WAS CLEARLY CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE.
In support of this assignment Reuben argues that the evidence clearly established that he acted in self-defense. The jury rejected that defense. Viewing the evidence in the light most favorable to the verdict, and in view of the two reversible errors already included in this record, this assignment of error is without merit.

III.

THE LOWER COURT ERRED IN ADMITTING INTO EVIDENCE THE CONFESSION OF DAVID REUBEN, JR., IN VIOLATION OF HIS FIFTH AND SIXTH AMENDMENT RIGHTS.
When Reuben was originally brought to the Pelahatchie Police Station by his father and was given his Miranda rights, his father informed the Pelahatchie police that an attorney was desired and that no statements would be made until one was present. The police understood that this was an effective assertion of Reuben's rights. After an extensive hearing the trial judge ruled that this was an effective assertion of Reuben's rights. On appeal there is no dispute as to whether Reuben's right to remain silent and right to consult with an attorney before further interrogation were properly invoked.
After Reuben's rights had been invoked, Officer Dodd questioned him about the weapon and took David Reuben, Sr., away from the police station in search of this weapon. Chief Myers kept David Reuben, Jr., at the Pelahatchie Police Station while Officer Dodd and David Reuben, Sr., searched for the weapon.
Since the Pelahatchie Jail had been condemned, David Reuben, Jr., was to be transported to Brandon. However, instead of immediately transporting David Reuben, Jr., to Brandon, Chief Myers kept him in Pelahatchie, where a crowd had gathered outside of the police station causing Chief Myers to fear for Reuben's safety. Myers kept David Reuben, Jr., in his office where Reuben supposedly confessed without any interrogation. The trial judge addressed this confession and stated:
Now, the State has tried to maintain here that he was sitting silently with the police officer, and that he comes up and makes voluntary statements later; and, consequently, they come within the voluntary statement exception to this situation. I don't buy that. I have held, and I am continuing to hold, that this was not a voluntary statement made that night but was in response to continuing interrogation in violation of his Miranda rights because he had asserted a right to counsel... .
During this interrogation, Chief Myers arranged to obtain a written statement the next morning. The next morning Chief Myers went to the Brandon Jail to get a written confession from David Reuben, Jr. After receiving his Miranda warnings again, Reuben complied with the chief's request and provided a written statement. Chief Myers testified that this written statement was "practically the same thing that he gave us that night."
The trial judge applied the "totality of the circumstances" test from Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), and ruled that the written statement was admissible though the oral statement was not. This statement was introduced at trial, over objection, and the trial judge's failure to suppress it is assigned as error.
The right against self-incrimination is guaranteed by the Fifth Amendment to the United States Constitution through the Fourteenth Amendment, and the Mississippi Constitution, Article III, Section 26, and *1388 Rule 1.03 of the Uniform Criminal Rules of Circuit Court Practice. In Cannaday v. State, 455 So.2d 713 (Miss. 1984), this Court indicated, that subject to the guidance of federal law, Mississippi Jurisprudence will control the resolution of issues involving rights which are adequately and independently secured by the laws of this State. Cannaday, at 722. See Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).
In weighing the admissibility of the written statement the trial judge used the "totality of the circumstances" test found in Brown v. Illinois, supra. In numerous decisions this Court has applied the totality of the circumstances test to determine if a statement was voluntarily given. See Hemmingway v. State, 483 So.2d 1335, 1336 (Miss. 1986); In the Interest of W.R.A., 481 So.2d 280, 285-287 (Miss. 1985). However, the test has not been, and cannot properly be applied when the defendant has invoked his right to remain silent and requested an attorney, and a statement is subsequently obtained as a result of an impermissible interrogation. Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).
In Edwards, supra, the defendant had invoked his right to remain silent and his right to counsel on January 19, and was given his Miranda warnings and interrogated again on January 20. Edwards, 451 U.S. at 479, 101 S.Ct. at 1882, 68 L.Ed.2d at 382. The Arizona Supreme Court applied the "totality of the circumstances" test and determined the statement was given voluntarily. The U.S. Supreme Court reversed, finding that "the Arizona Supreme Court applied an erroneous standard for determining waiver where the accused has specifically invoked his right to counsel." Edwards, 451 U.S. at 482, 101 S.Ct. at 1883-84, 68 L.Ed.2d at 385.
In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court stated, "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." Miranda, 384 U.S. at 474, 86 S.Ct. at 1602, 16 L.Ed.2d at 723. See also, Edwards v. Arizona, supra; Fare v. Michael C., 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979); Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).
In Cannaday v. State, supra, Justice Prather stated:
It is reasonably clear under our cases that waivers of counsel must not only be voluntary, but must also constitute a knowing abandonment of a known right or privilege, a matter which depends in each case "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." Johnson v. Zerbst, 304 U.S. 458, 464, 82 L.Ed. 1461, 58 S.Ct. 1019 [1023], 146 A.L.R. 357 (1938).
Cannaday, at 723, quoting Edwards v. Arizona, 451 U.S. at 482, 101 S.Ct. at 1884, 68 L.Ed.2d at 385.
It was further stated that waiver of these rights, "should not be inferred from the mere response by the accused to overt or more subtle forms of questioning." Cannaday, at 723, quoting Edwards, 451 U.S. at 484, 101 S.Ct. at 1884, 68 L.Ed.2d at 386.
Edwards v. Arizona established that the "totality of the circumstances" test cannot properly be applied to a statement which was solicited by the State after the accused had invoked his right to counsel, unless the State can show "a knowing and intelligent relinquishment or abandonment of a known right or privilege." Edwards, 451 U.S. at 482, 101 S.Ct. at 1882, 68 L.Ed.2d at 385. The prosecution cannot, on this record, demonstrate that Reuben understood and waived his rights. The record states:
Q. All you did was read it [Miranda] to him. You didn't discuss it with him, did you?
A. I read it to him and asked him if he understood it. He said, "Yes."
Q. Okay. Now, did you ask him anything else other than did he understand it?
A. Not pertaining to rights. No.

*1389 Q. That's all you asked him: do you understand that?
A. Right.
Q. And you did not ask him at that time, "Well, do you want a lawyer here?"
A. I don't recall yes or no. I wouldn't answer your question yes or no.
This case is further complicated by the fact that Reuben's substantive rights were violated by Officer Dodd and Chief Myers on the night he was arrested. The oral statements which they obtained from Reuben were "not voluntary." The impermissible questioning which occurred in the Pelahatchie Police Station bears on the admissibility of the written statement which was obtained the next morning in Brandon. It can be said that the written statement "flowed" from the impermissible questioning which occurred the previous night.
The record reflects that during the impermissible questioning in Pelahatchie, Chief Myers arranged to have the statement reduced to writing on the following day. The written statement which Reuben gave the police was the same as the oral one he had given the night before. In Yates v. State, 467 So.2d 884 (Miss. 1984), speaking through Bowling, J., this Court allowed a defendant's statement to be admitted but held:
The situation would be entirely different had the confession not been reiterated and signed after appellant conferred with his attorney.
Yates, at 886.
In Yates the defendant had been offered the opportunity to confer with an attorney and had conferred with an attorney and then waived his Miranda rights and gave the written statement. That is not the case here. There is no event in this record which breaks the causal connection between the illegal interrogation in Pelahatchie and the written statement which was obtained by the Chief of Police the following morning.
The written statement should have been suppressed because it was the product of an illegal interrogation, which occurred without the presence of counsel after the right to counsel had been invoked. The police initiated questioning of Reuben in Brandon was impermissible and the Miranda warnings which were given were insufficient. Having once invoked his rights in vain it would have been reasonable for Reuben to conclude that he would be interrogated regardless of his response to the Miranda warnings.
The admission of the written statement into evidence against David Reuben, Jr., violated his rights secured by the Fifth Amendment to the United States Constitution, Article III, Section 26 of the Mississippi Constitution, and Rule 1.03 of the Uniform Criminal Rules of Circuit Court Practice. Therefore, the conviction of David Reuben, Jr., must be reversed and this cause remanded to the Circuit Court of Rankin County, Mississippi.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.