CHANDLER, J.,
for the Court:
¶ 1. Timothy Hodnett was convicted in the Warren County Court of hunting during a closed season and hunting without wearing fluorescent orange. Timothy appealed his conviction on these misdemean- or charges to the Warren County Circuit Court, which affirmed the convictions. On appeal to this Court, Timothy alleges that the circuit court erred in affirming the county court convictions because:
I. THE COUNTY COURT LACKED JURISDICTION;
II. THE COUNTY COURT ERRED IN FINDING THAT TIMOTHY’S MIRANDA RIGHTS DID NOT ATTACH;
III. THE COUNTY COURT ERRED IN NOT SUSTAINING TIMOTHY’S MOTION FOR RECUSAL;
IV. THE COUNTY COURT ERRED BY GIVING GREATER WEIGHT TO THE TESTIMONY OF A STATE OFFICER THAN TO A LAY WITNESS; AND
V. THE STATE DID NOT MEET ITS BURDEN OF PROOF BEYOND A REASONABLE DOUBT.
Finding no error, we affirm.
FACTS
¶ 2. Officer Bobby Hodnett, a game officer with the Department of Wildlife and Fisheries, received a call from a fellow game officer informing him that his cousin, Timothy Hodnett, was observed hunting with a high-powered rifle during primitive weapons season at the Brooks Ridge Hunting Club in Warren County. Officer Hodnett and Officer Mike Jones traveled in separate vehicles to the Brooks Ridge Club. When Officers Hodnett and Jones arrived at the Brooks Ridge Club, they hid their trucks and proceeded to the hunting club on foot.
¶ 3. Officer Hodnett became entangled in a fence that he and Officer Jones were attempting to traverse. As he and Officer Jones were laughing about the snafu with the fence, Officer Hodnett espied cousin Timothy about 60 yards away. Timothy was walking on a road through the woods *673 sporting a Weathersby rifle on his shoulder. Officer Hodnett knew that the rifle his cousin wielded was a Weathersby because this particular brand of rifle is distinguished by a white line on the forearm portion of the rifle. A high-powered rifle is not a primitive weapon. Officer Hod-nett further observed that Timothy was wearing a camouflage vest. As Timothy ran, the vest flapped open revealing a fluorescent orange lining.
¶4. When Timothy spotted the game officers, he abandoned the road and dashed into the woods. Having had a sixty-yard head start, Timothy managed to lose the officers in the woods. When Timothy emerged from the woods about fifteen to twenty minutes later, he no longer possessed the rifle. The fluorescent orange portion of Timothy’s vest was turned outside and the camouflage portion was turned inside. Timothy was accompanied by two gentlemen, one of whom was Jamie Thomas Scates.
¶ 5. Officer Jones confirmed Officer Hodnett’s testimony. Officer Jones further testified that when Timothy emerged from the woods, he was sweating and breathing heavily, as if he had been running. The other two gentlemen were neither sweating nor breathing heavily. Timothy’s attorney, his sister, suggested in her questioning of Officers Hodnett and Jones that Timothy was a corpulent fellow. She expressed incredulity that these two physically fit officers were unable to capture Timothy red-handed with the rifle. She questioned the two officers’ identification of Timothy as the Weathersby-wielding gentleman they saw in the woods.
¶ 6. Scates testified that he was with Timothy the entire time they were at the Brooks Ridge Club. Scates said he never saw Timothy with a high-powered rifle. He testified that Timothy had a muzzle-loader that day, which remained in Timothy’s father’s truck the entire time they were at the club. Scates further testified that he and Timothy were garbed in hunter’s orange. Scates’s testimony regarding his acquaintance with Timothy was somewhat confusing. Scates at first testified that he had only seen Timothy approximately twice before this occasion. He then testified that he talked to Timothy on the telephone occasionally. He then admitted that he and Timothy probably spoke on the telephone about once per week.
¶ 7. Officer Hodnett ticketed Timothy for hunting during a closed season and for hunting without wearing fluorescent orange. Officer Hodnett delivered the tickets to the Warren County Justice Court clerk. The justice court clerk gave the tickets to the county attorney, who decided to bring charges in county court instead of justice court. The county attorney submitted affidavits charging Timothy with the two misdemeanors charged in the tickets and one additional affidavit charging hunting in a baited field. The county court judge, sitting without a jury, dismissed the baiting charge and ruled Timothy guilty on the other charges. The Warren County Circuit Court affirmed the convictions.
LAW AND ANALYSIS
I. DID THE COUNTY COURT LACK JURISDICTION?
¶ 8. Timothy argues that the action was instituted in justice court and that he had already lodged a “not guilty” plea in justice court. Timothy admits that the justice and county courts share concurrent jurisdiction over misdemeanors. However, Timothy argues that the justice court acquired exclusive jurisdiction because the case was first instituted in justice court. Timothy argues that by pursuing him in *674 county court, he was essentially denied his due process right to a de novo appeal. Timothy further complains that the traditional jurisdiction for a controversy arising from a misdemeanor game violation is justice court. For some reason, Timothy thinks this also violated his due process rights.
¶ 9. The problem with Timothy’s due process argument is two-fold: (1) he did not support it with law and (2) he did not present any evidence to support his allegation of procedural irregularity. With the exception of three civil cases which had absolutely no bearing on the particular question at bar, Timothy cited no law to support his claim.
¶ 10. Mississippi Code Annotated section 9-9-21 (Supp.2000) provides that the county court enjoys jurisdiction concurrent with the justice court “in all matters, civil and criminal of which the justice court has' jurisdiction.” To avoid confusion, “the first court acquiring jurisdiction should proceed with trial and disposition of [the] case.” Smith v. State, 198 Miss. 788, 794, 24 So.2d 85, 86 (1945). This rule “is intended to prevent confusion and conflicts in jurisdiction, and to prevent a person from being twice tried for the same offense, and no defendant has the vested right to be tried in any particular court of concurrent jurisdiction.” Id. (emphasis added). In the case sub judice, Timothy did not have a right to have his case tried in justice court rather than county court. The question is whether the justice court acquired jurisdiction over this case before the case was brought in county court.
¶ 11. Timothy argues that his case was first filed in justice court; thus, justice court acquired exclusive jurisdiction. Timothy was unable to prove, however, that affidavits were filed in justice court. “[A]n affidavit is essential to confer jurisdiction on a justice of the peace to try and punish an offender ... and the [justice] court has no jurisdiction without it.” Smith, 198 Miss, at 795, 24 So.2d at 87. Timothy submitted copies of the tickets he received into evidence; however, he admitted that he did not know whether the tickets were actually filed in justice court. Timothy’s attorney told the county court judge that the justice court clerk had called her about the charges against Timothy. She showed the judge a copy of a facsimile she sent to the justice court clerk in which she informed the clerk that Timothy plead “not guilty” to the charges. These documents are not included in the appellate record.
¶ 12. The county court judge reviewed the tickets and noted that they were not supported by affidavits. Without affidavits, the trial court held that the justice court never attained jurisdiction over the case. Simply stated, there is no proof that a justice court action was ever initiated. Conversely, the county court action was instituted by the county attorney’s action in filing three affidavits charging Timothy with the hunting violations. The circuit court was correct in affirming the county court’s decision that it had jurisdiction.
II. DID THE COUNTY COURT ERR IN FINDING THAT TIMOTHY’S MIRANDA RIGHTS DID NOT ATTACH?
¶ 13. Timothy argues that the officers failed to read him his rights, set forth in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), when they arrested and interrogated him. However, Timothy was never arrested, though he and his comrades were detained long enough for Officer Hodnett to arrive and write the tickets. Further, Timothy made no incriminating statements during the investigation. Timothy does not complain that statements he made were obtained in *675 violation of Miranda, nor does he complain that statements were introduced into evidence. He simply complains that his right to counsel attached at the moment of his arrest. He states: “Even if ‘no statement of confession’ was used from that interrogation, the right to counsel had attached.” He concludes that this “violation” of Miranda warrants reversal of the county court’s verdict.
¶ 14. While this argument is certainly creative, it is devoid of legal merit. Perhaps this is why Timothy failed to cite any authority to support his novel interpretation of Miranda. While this Court is under no legal compulsion to consider Timothy’s unsupported ground of error, Taylor v. State, 754 So.2d 598 (¶ 12) (Miss.Ct.App.2000), even so this allegation of error is without merit. In Thompson v. State, 342 So.2d 306 (Miss.1977), our supreme court stated:
The exclusionary rule announced in Miranda applies only where custodial interrogation produces some response to the defendant and the State seeks to introduce that response into evidence at the trial of the defendant. Miranda simply does not apply %vhere there is custodial interrogation of the defendant and the responses obtained are not introduced in evidence by the State at the trial; Miranda formulated a rule designed to exclude evidence, but not to void convictions where fruitless custodial interrogation occurs in the absence of prior warnings.
Id. at 310 (quoting State v. Crothers, 278 So.2d 12 (La.1973)) (emphasis added). Applying this logic to the facts, the Thompson court ruled that since the defendant made no inculpatory statements during a police interrogation and since the State did not attempt to introduce any of the defendant’s statements, Miranda could not be invoked. In the case sub judice, Timothy did not make any inculpatory statements and the State did- not seek to introduce any statements. His invocation of Miranda is erroneous.
III. DID THE COUNTY COURT ERR IN NOT SUSTAINING TIMOTHY’S MOTION FOR RECUSAL?
¶ 15. Timothy alleges that Officer Hodnett had conversed with Justice Court Judge Willard about Timothy’s game violations and that he, Officer Hodnett, had mentioned County Court Judge Hosemann by name. Timothy requested that Judge Hosemann recuse himself. Further, Timothy requested that Judge Hosemann re-cuse himself because this particular judge had presided and rendered judgment against him on similar game violations.
¶ 16. Officer Hodnett denied mentioning Judge Hosemann by name to Judge Willard. In fact, Officer Hodnett was not personally acquainted with Judge Hosem-ann and had only met Judge Hosemann during the trial of one of Timothy’s previous hunting violations. Judge Hosemann had no memory of conversing about this particular case. He further had no memory of the previous actions involving Timothy. Judge Hosemann said he vaguely remembered a time when some justice court judge from Rolling Fork tried to contact him by telephone. Judge Hosem-ann could not remember whether he talked to the justice court judge. If he did, Judge Hosemann had no memory of the conversation. Judge Hosemann stated that if he did converse with the justice court judge, the conversation was innocuous.
¶ 17. Timothy argues that Canon 2 of the Code of Judicial Conduct provides that a judge should conduct himself in a manner that promotes public confidence in the integrity and impartiality of the judiciary. Timothy argues, under the circumstances above-described, that Judge Hosemann *676 should have recused himself. Timothy-discussed Officer Hodnett’s actions in speaking to Justice Court Judge Willard in presenting his argument that Judge Ho-semann should recuse himself. It is not clear to this Court how Officer Hodnett’s actions bear Judge Hosemann’s purported need to recuse.
¶ 18. Canon 3C of the Mississippi Code of Judicial Conduct governs disqualification of judges. The applicable portion of Canon 3C provides:
(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.
Miss.Code of Judicial Conduct, Canon 3 C(l)(a). Under the above circumstances, Judge Hosemann’s impartiality could not have been reasonably questioned. He had absolutely no memory of a purported conversation regarding the facts of Timothy’s case. He further had no memory of the previous action involving Timothy; indeed, he had to ask the county attorney what the disposition of the previous case was. Timothy absolutely failed to show that the judge had any personal bias or prejudice toward him, and he further failed to demonstrate that the judge had personal knowledge of disputed evidentiary facts. The circuit court found this ground of error frivolous. We agree.
IV. DID THE COUNTY COURT ERR BY GIVING GREATER WEIGHT TO THE TESTIMONY OF A STATE OFFICER THAN TO A LAY WITNESS?
¶ 19. Timothy argues that the trial judge gave greater weight to the game officers’ testimony than to Timothy’s only defense witness. Timothy argues “as a matter of law” one can grant no greater deference to the testimony of a state officer rather than to a lay witness’s testimony. Timothy failed, however, to cite any law to bolster this bold statement.
¶ 20. In Stewart v. State, 355 So.2d 94 (Miss.1978), the supreme court affirmed a trial court’s refusal to instruct the jury to not place greater weight to the testimony of a law enforcement officer than to the testimony of the lay witnesses. The supreme court reasoned that to allow such instruction would violate Miss.Code Ann. § 99-17-35 (Rev.2000) which forbids a trial judge from commenting on the weight of evidence. See also Hansen v. State, 592 So.2d 114 (Miss.1991). While Timothy was not tried before a jury, Stewart illustrates the fallacy of Timothy’s argument that a finder of fact can place no greater weight on a law enforcement officer’s testimony than a lay witness’s. In truth, it is up to the finder of fact to weigh the testimony of the witnesses. Further, there is no evidence that the trial judge gave greater weight to Officer Hodnett’s and Officer Jones’s testimony simply because they were law enforcement officers. Timothy only offered one witness and that witness’s testimony was fraught with inconsistencies.
V. DID THE STATE MEET ITS BURDEN OF PROOF BEYOND A REASONABLE DOUBT?
¶ 21. Timothy argues that the court must direct a verdict if the State fails to prove the essential elements of the ci-ime charged. He argues that Jamie Scates’s testimony alone raises a reasonable doubt; thus, the county court erred in not directing a defense verdict.
¶ 22. The lower court directed a verdict on the illegal baiting charge. It refused, however, to direct a verdict on the other two charges. Timothy argues that posses *677 sion of a gun is an essential element to the hunting during a closed season ground, and that since the officers never recovered a gun he cannot be convicted of hunting during a closed season. Timothy again offers no law to support his argument that the hunting implement must be seized to sustain a conviction on an illegal hunting charge.
¶ 23. A directed verdict motion is a challenge to the legal sufficiency of the evidence. In evaluating legal sufficiency of the evidence to sustain a conviction, all credible evidence consistent with Timothy’s guilt must be accepted as true and the State must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993).
¶24. Mississippi Code Annotated section 49-7-45(1)® (Rev.1999) forbids hunting or trapping any birds, game, or wild animals during a closed season. Timothy was seen in possession of a high powered rifle at a hunting camp during primitive weapons season. Officers Hodnett and Jones both saw Timothy with a rifle. Each being experienced hunters, they knew that the weapon wielded by Timothy was not primitive. That the officers were unable to catch Timothy with the gun is of no consequence. Timothy was obviously successful in hiding the gun before he emerged from the woods. The eyewitness testimony of these two game officers was credible and sufficient to sustain the guilty verdict on the hunting during a closed season charge.
¶25. The fact finder found that the eyewitness testimony was also sufficient to prove beyond a reasonable doubt that Timothy was not wearing 500 square inches of fluorescent orange as required by Miss. Code Ann. § 49-7-31(l)(e)(vi) (Rev.1999). While Scates’s lay testimony contradicted the officers’ testimony, there is no law that states that contradictory testimony automatically raises reasonable doubt. It was the finder of fact’s prerogative to determine whose testimony to believe. The trial judge exercised his prerogative in the State’s favor. This assignment of error is without merit.
¶ 26. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT AFFIRMING CONVICTION OF APPELLANT FOR MISDEMEANOR HUNTING DURING A CLOSED SEASON AND HUNTING WITHOUT WEARING FLUORESCENT ORANGE AND SENTENCE OF THIRTY (30) DAYS IN THE COUNTY JAIL SUSPENDED WITH CONDITIONS AND $600 FINE IS AFFIRMED. COSTS ARE ASSESSED TO APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, IRVING AND MYERS, JJ., CONCUR.