275 So.2d 83 (1973)
Calvin EVANS, Jr.
v.
STATE of Mississippi.
No. 47156.
Supreme Court of Mississippi.
March 12, 1973.
Rehearing Denied April 9, 1973.
Buckley & Ford, Laurel, for appellant.
A.F. Summer, Atty. Gen., by Karen Gilfoy, Special Asst. Atty. Gen., Jackson, for appellee.
INZER, Justice:
Appellant Calvin Evans, Jr., was indicted, tried and convicted in the Circuit Court of Jasper County of the crime of murder in the killing of Julia N. Cooley. He was sentenced to life imprisonment at the State Penitentiary. From this conviction and sentence he appeals. We affirm.
On December 25, 1970, Julia N. Cooley was killed at her home in Vossburg. She was about 93 years of age and lived alone. Her body was discovered by a neighbor. Sheriff Green was called, and he and his *84 deputy investigated the situation. Mrs. Cooley's body was found on the ground to the left of the front porch of her home. An orange was lying near her body. An ax was found lying near the house and there appeared to be blood upon it. The front of Mrs. Cooley's head was caved inward, and she had been shot in the head. A bullet was found on the ground at the location of the body. Inside the house the officers found that a trunk had been prized open and that Mrs. Cooley's purse had been gone through and its contents scattered. It was known that Mrs. Cooley had a pistol, but it could not be found. However, some cartridges were found in her purse. Shoe prints were found leading from an embankment to the house.
The sheriff in his investigation talked with a number of people to determine if anyone had been seen near the scene of the crime. It was discovered that Leroy Jenkins had been seen near the Cooley home, and he was taken into custody. On December 27, 1970, the sheriff talked with Evans concerning the whereabouts of Jenkins on the day of the killing. Upon further investigation the sheriff learned that several witnesses had seen Evans near the scene of the crime on that particular day. On December 30, 1970, Evans was arrested and carried to the City Hall at Heidelberg. At this time he was fully advised of his Miranda rights. He told the sheriff where he had been on the day of the killing but denied that he had been to Mrs. Cooley's home. The feeling around Vossburg was very high about the murder, and the jail in Heidelberg was not considered safe, so Evans was carried to the jail in Smith County for his own safety. On the following day at approximately 5 p.m., Sheriff Green, Officers A.E. Bounds and Billy Harper were present when appellant was again questioned. When appellant was brought into the room he was read his Miranda rights by Billy Harper. He signed a waiver stating that he did not want an attorney and that he would answer questions. Appellant then made an oral statement in which he stated that at about 1:30 or 2:00 on December 25, 1970, he went to the Cooley home to cut some wood, and did cut some wood and put it on the fire. He stated that Mrs. Cooley then offered him an orange for cutting the wood, and he then knocked her in the head with the ax. He went into the house to look for her money, but did not find it. He found a .38 caliber pistol which he picked up and came back to the edge of the porch and to make sure that Mrs. Cooley was dead, he fired a bullet through her head. He then left running and went across to Highway 11, hid the gun, and then went on to Vossburg and then on home. After Evans had confessed he went with the officers to the place where he had hidden the gun and found it.
When appellant was tried an objection was made to the introduction in evidence of the confession. A preliminary hearing was had and the trial judge ruled that it was admissible in evidence. Appellant testified on his own behalf and admitted that he went to the Cooley home at about 1:30 p.m. on December 25, 1970. He said he was passing the house and the door was opened and when he got to the house he knocked and no one answered, so he just walked inside. The house was torn up and he saw a .38 caliber pistol on the bed which he picked up. He then walked out on the porch and when he reached the edge of the porch he saw Mrs. Cooley's body lying on the ground. He said he became scared and ran, and while going through the woods he threw the gun to the side of the road. He then returned home but did not tell his mother or anyone else about what he had seen, because he did not want to get involved. He denied that he killed the deceased.
Appellant's assignment of errors is as follows:
1. The trial court erred in admitting the confession of appellant into evidence because the confession of the appellant was illegally obtained because he was illegally detained when the confession was given in that no warrant had been issued *85 for his arrest and there existed no probable cause for his arrest in the first instance.
2. The trial court erred in admitting the confession of appellant into evidence because the confession was not proven to be completely voluntary.
Insofar as the arrest is concerned, appellant made no contention in the trial court that his arrest was illegal and not having raised this issue in the trial court, he effectively waived it. Gordon v. State, 160 So.2d 73 (Miss. 1964). However, even had the question been raised, we are of the opinion that the evidence was sufficient to show probable cause for his arrest. Sheriff Green testified that in the investigation several witnesses had seen appellant near where the crime was committed. There was no doubt that a crime had been committed, and appellant had been seen about the time the crime was committed near where the footprints were found on the embankment going to Mrs. Cooley's house. We said in Powe v. State, 235 So.2d 920 (Miss. 1970):
The Court pointed out in Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1948):
In dealing with probable cause, * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. (338 U.S. at 175, 69 S.Ct. at 1310, 93 L.Ed. * * * at 1890).
It has been said that ordinarily, when the trustworthy evidence makes it clear that an offense has been committed and that a particular person was on the scene at the time it was committed, and then available evidence makes it reasonable to infer that the particular person not necessarily was, but may have been, one of the offenders, most discreet and prudent men would order that person's arrest. See: United States v. Cooperstein, 221 F. Supp. 522 (D.Mass. 1963).
It is clear, therefore, that "probable cause" means less than evidence which would justify condemnation (Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, supra), but more than bare suspicion Locke v. United States, 11 U.S. (7 Cranch) 339, 3 L.Ed. 364 (1813)).
(235 So.2d at 922, 923).
We think that the record reflects sufficient evidence to show probable cause for the arrest, but a person although illegally detained may make a voluntary confession so long as his constitutional rights are preserved. Bell v. State, 274 So.2d 371 (Miss., February 12, 1973).
We are of the opinion that the real issue in this case is whether the confession was voluntarily made after appellant was advised of his constitutional rights. Before admitting the confession in evidence the trial court conducted a preliminary hearing to determine whether it was voluntary. All the officers present when the confession was made testified. The evidence established that before appellant was questioned on that day his Miranda rights were read to him, and he signed a statement stating that he had read them, he signed a waiver in which he stated that he did not want a lawyer, and he was willing to answer questions. Appellant did not testify on the preliminary hearing and offered no evidence to contradict the facts testified to by the officers. Nevertheless, appellant contends that the state failed to prove beyond a reasonable doubt that the confession was completely voluntary. There is no material conflict in the evidence on this point. It reflects that after appellant was warned of his rights and signed a waiver, he was asked if he wanted to tell the truth about the crime. He started telling the officers the same story that he told the day before. At this point officer Harper told him that he was a "damned lie" because he had checked out his story and it was not true. Harper then told appellant that he *86 (Harper) could tell him where he had been and what he had done, and appellant could either go and get the gun for them or they could carry him to the gun. Appellant then asked Sheriff Green if he was guilty what would be the penalty. The sheriff told him he could get the gas chamber or could not. Appellant then made the statement admitting committing the crime and then carried the officers to the place where he hid the gun and they found the gun.
Appellant argues that warning given was defective in that it did not inform him that if he wanted an attorney it would be immediately furnished and tended to mislead him in believing that he could not get a lawyer unless he confessed and went to court. It is clear that the appellant was informed that he did not have to answer any questions or make any statements before he talked with a lawyer and that he had the right to have a lawyer present during the questioning, if he so desired. It also informed him that if he wanted to answer questions he could stop answering at any time until he talked to an attorney. He was informed that if he could not afford a lawyer, one would be appointed for him. He was told that the officers had no way of furnishing him a lawyer, but if he wanted a lawyer one would be appointed for him, if and when he went to court. We think that appellant was fully advised of his rights to have a lawyer and appellant's argument in this regard is answered in Mayzak v. United States, 402 F.2d 152 (5th Cir., 1968), wherein it is stated:
Stripped of its cry of pain, defendant's contention is simply that he was entitled to be warned not only of his right to counsel, but of his right to instant counsel. Miranda however, does not require that attorneys be producable on call, or that a Miranda warning include a timetable for an attorney's arrival. Nor does it seem to us requisite that the officer conducting the interview declare his personal and immediate power to summon an attorney. The adequacy of the warning is not jeopardized by the absence of such imbellishments. (402 F.2d at 155).
We are of the opinion that in the absence of any testimony to the contrary the trial court was amply justified in finding appellant understood his rights to have a lawyer, and he did not desire one.
Appellant also argues that the confession was not voluntary because he was carried to another county and held in jail for nearly twenty-four hours before he confessed, and that he was only twenty years of age and was intimidated by being questioned in a strange place by three large law enforcement officers. The difficulty about this argument is that the appellant did not exercise his right to testify on the preliminary hearing. There is nothing in the record to indicate that appellant was scared or that he was intimidated in any way. He was not threatened, coerced or made any promises to induce him to confess. We are of the opinion that the evidence justified the trial court in finding beyond a reasonable doubt that the confession was freely and voluntarily made.
After a careful review of the record in this case, we are of the opinion that the appellant received a fair and impartial trial in which all of his constitutional rights were protected. The jury was amply justified in finding him guilty of a brutal and senseless murder and for these reasons this case should be and is affirmed.
Affirmed.
RODGERS, P.J., and PATTERSON, ROBERTSON, and WALKER, JJ., concur.