## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00629-COA

**WILLIE D. TRIPLETT**                                                          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                       **APPELLEE**

DATE OF JUDGMENT:              03/14/2017
TRIAL JUDGE:                   HON. CHRISTOPHER A. COLLINS
COURT FROM WHICH APPEALED:     NESHOBA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        OFFICE OF STATE PUBLIC DEFENDER
                               BY: HUNTER NOLAN AIKENS
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                               BY: ABBIE EASON KOONCE
DISTRICT ATTORNEY:             MARK DUNCAN
NATURE OF THE CASE:            CRIMINAL - FELONY
DISPOSITION:                   AFFIRMED - 09/04/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE IRVING, P.J., WILSON AND TINDELL, JJ.

### WILSON, J., FOR THE COURT:

¶1.     Willie Triplett was convicted of burglary of a church following a jury trial in the Neshoba County Circuit Court.  On appeal, Triplett argues that his confession should have been suppressed pursuant to the Fourth Amendment to the United States Constitution because he was arrested without "probable cause" and his subsequent confession was "obtained by exploitation of his illegal arrest."  However, Triplett did not raise this issue at trial.  Rather, the trial judge found that Triplett's confession was voluntary and admissible under the Fifth Amendment and *Miranda v. Arizona*, 384 U.S. 436 (1966), and Triplett did not raise a further objection based on an allegedly illegal arrest.

¶2.    It is well established that "an objection on one or more specific grounds constitutes a waiver of all other grounds." *Fleming v. State*, 604 So. 2d 280, 292 (Miss. 1992); *see Evans v. State*, 275 So. 2d 83, 85 (Miss. 1973) (holding that defendant "effectively waived" any objection to his confession based on an allegedly illegal arrest because at trial he only argued that the confession was not voluntary). We conclude that Triplett waived any objection based on an allegedly illegal arrest because he did not raise that issue at trial.

¶3.    Triplett also argues that the evidence was insufficient to convict him and that the verdict was against the overwhelming weight of the evidence. However, these arguments are based in part on Triplett's procedurally barred claim that his confession should have been suppressed as the product of an illegal arrest. Taking Triplett's confession into account, there is sufficient evidence to sustain the conviction, and the verdict was not against the overwhelming weight of the evidence. Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶4.    On August 31, 2016, Investigator Ralph Sciple of the Neshoba County Sheriff's Department received a phone call from Gerald Beam, the owner of a local pawn shop. Beam told Sciple that a black man had just tried to pawn a Mantis tiller. Beam suspected that the tiller was stolen, although the record does not indicate why Beam was suspicious. Beam gave Sciple the tag number for the vehicle that the man was driving, a large white SUV. Sciple determined that the SUV, a 2006 Chevrolet Suburban, was registered to Darry and Elizabeth Williams.

¶5.    The Williamses lived on the Choctaw Indian Reservation, so Sciple contacted Captain

Robert York of the Choctaw Police Department. York said he knew the Williamses and also knew "that there was a black male [at their house] from time to time." York used the information that Sciple provided him to obtain a search warrant from the Choctaw Tribal Court.[1] Sciple testified that the search warrant covered the Williamses' SUV and residence and any other buildings on their property. Sciple testified that he "was hoping to find some stolen property in the SUV."

¶6.     Choctaw police executed the search warrant at the Williamses' home on September 1. Sciple was not present when the search began, but he arrived shortly thereafter. When Sciple arrived, York had handcuffed a black man (Triplett) and was talking to him "off to the side." Elizabeth Williams also was present.

¶7.     No Mantis tiller was found during the search. However, as police searched the SUV, they found two Peavey speakers, a Peavey mixer, a wireless connector, a microphone, and a bag of cables. No one at the residence claimed ownership or knowledge of the sound equipment. Sciple testified that the "first thing [he] noticed" about the equipment was that it looked like it "didn't belong" in the SUV. Sciple thought that the equipment looked like it might be used in a church. There had not been any report of a church burglary at that point. Nonetheless, Sciple photographed and took custody of the equipment "in case something did come up regarding stolen items." Triplett was also taken into custody at that time.

¶8.     Three days later, on Sunday, September 4, the pastor at the East Philadelphia Church of God, Reverend Charles Hardy, discovered that speakers and other sound equipment were

------

[1] The warrant was not presented at trial and is not included in the record.

missing from the church. He called the sheriff's department to report a possible burglary. Hardy testified that worship services are held at the church only the first and third Sundays of each month, but Sunday School is taught each Sunday. Hardy believed that the equipment was stolen during the previous week because no one reported that anything was missing when the church was open for Sunday School on August 28. However, Hardy could not say for certain when the equipment was taken. Hardy also testified that there was a broken window in the back of the church, which he thought was the burglar's point of entry.[2] Hardy thought that the burglar probably left the church through the back door, since he would have been carrying heavy sound equipment. Hardy said that several people had keys to the church, including himself, a custodian, his daughter, and possibly others. After reporting the crime, Hardy went to the sheriff's department and identified the sound equipment that was found in the Williamses' SUV as the church's sound equipment.

¶9.     On September 7, Sciple interviewed Triplett about the church burglary. By this point, Triplett had been in custody for seven days. Sciple advised Triplett of his *Miranda* rights, and Triplett signed a waiver of rights form. Triplett signed a written statement that stated in full: "I Willie Triplett did break into chruch [sic] & took goods."[3]

¶10.    Triplett was indicted for burglary of a church, and his case proceeded to trial. During the trial, two suppression hearings were held outside the presence of the jury. During the

---

[2] A photograph of the broken window, which had been boarded up, was admitted into evidence at trial. The photograph also shows broken glass on the ground outside the church.

[3] Sciple testified that Triplett wrote and signed the statement. Triplett acknowledged that he signed the statement but testified that Sciple wrote the statement for him.

first hearing, the State first called Darry Williams, who testified that his daughter, Amelia, does not live at his house permanently but "comes and goes," and Triplett had spent the night there with her. Williams also testified that on occasion Amelia and Triplett had taken the keys to his SUV and driven the SUV, but neither of them owned or had permission to use it. Next, Sciple testified about the tip he received from Beam and the search of the Williamses' SUV. Sciple also testified that Triplett did not have any ownership interest in the SUV or the Williamses' residence. Finally, Triplett testified that he stayed at the Williamses' house frequently between May and August, except for a period in July and August when he had been "locked up" in jail "for old fines." However, Triplett admitted that he did not own the Williamses' SUV.

¶11. At the conclusion of the testimony during the first suppression hearing, Triplett's trial counsel orally "move[d] . . . to suppress inferences that . . . the pictures of the [stolen sound equipment] be used against Mr. Triplett because they were seized from the house that he was living at whether or not he owned an ownership interest in that house." Triplett's counsel also asked "to suppress any evidence of a connection between Mr. Triplett and the [photographs of the stolen sound equipment]." After counsel made his oral motion, the following exchange occurred:

Trial judge:        Suppress any inferences?

Defense counsel:    Suppress any testimony that Mr. Triplett – after Mr.
                    Triplett was arrested on this, . . . the police took a
                    statement from Mr. Triplett regarding these items that we
                    believe the State would seek to introduce at a later date.
                    If Mr. Triplett was not arrested in connection with these
                    items initially, then he would not have been in custody to

5

have given a statement.

Trial judge: Okay. I want to be sure I understand that at this juncture, the statement – we are not there.

Defense counsel: Right. We are not there yet.

Trial judge: We are not even talking about that yet. Right now you are asking that the suppression be for any inference related to Mr. Triplett and the items that have been introduced into evidence, pictures of them?

Defense counsel: Yes, sir, Your Honor.

¶12. In response to Triplett's motion, the State argued that Triplett did "not have any standing to object" to the search because he did not own the vehicle or the property on which it was parked. The State argued that a defendant does not have Fourth Amendment rights with respect to "the search of a third person's premises or property." The State also emphasized that the equipment was found in the vehicle and Triplett "was not even in the vehicle" when it was searched.

¶13. The trial judge then asked whether Triplett's counsel had any rebuttal. Triplett's counsel argued that Triplett had standing because he used the home "as a residence," even if he did not own it. Counsel argued, "I don't think the question is an ownership interest. I think the question is . . . whether he used [the home] as a residence."

¶14. The trial judge then found that Amelia and Triplett had used the SUV only "without permission" and that Triplett was essentially a "sporadic guest" at the Williamses' home. The judge then denied the motion to suppress, ruling as follows:

I am not persuaded that [Triplett] has standing to challenge the search or search warrant . . . . I did not discern any evidence . . . concerning any claim

6

whatsoever by [Triplett] to the white Chevrolet Suburban. . . . I am not persuaded [that Triplett] had any property interest whatsoever in the residence . . . . I don't think he had any reasonable expectation of privacy at that residence, so your motion to suppress is overruled.

¶15. A second suppression hearing was held just before Sciple testified about Triplett's confession. Sciple testified that he interviewed Triplett on September 7. Triplett signed a *Miranda* waiver before the interview began. Triplett had been in jail for about seven days and did not appear to be under the influence of drugs or alcohol. Sciple testified that he did not threaten Triplett, promise him leniency, or suggest that things would be better for him if he gave a statement. According to Sciple, as he and Triplett talked about the church burglary, Triplett "starting talking about his girlfriend." Triplett eventually stated, "I'm just going to take all responsibility and I am going to make a statement." Triplett then wrote out and signed the confession that was admitted into evidence at trial.

¶16. On cross-examination, Triplett's trial counsel began by asking Sciple what "led [him] to believe that [Triplett] was not under the influence of any drugs when he confessed." Counsel next asked Sciple whether it was "possible" that Triplett "could have gotten drugs back in the jail." Trial counsel also asked Sciple whether Triplett appeared to be taking the blame for his girlfriend and whether Triplett ever sought to recant his confession. Sciple was confident that Triplett was not under the influence and that Triplett was involved in the burglary, although he conceded that Triplett's girlfriend may have been involved as well. Sciple testified that Triplett never approached him in an effort to recant, and he never heard that Triplett wanted to recant.

¶17. Triplett testified again during the second suppression hearing. Triplett claimed that

7

he had gotten some marijuana in jail and was high when he confessed. He also claimed that he told Sciple that he would "take the blame" for the burglary even though he "didn't do it." Triplett acknowledged that he signed his written statement, but he claimed that Sciple wrote out the brief statement for him. Triplett testified that he later regretted his confession and made numerous requests to talk to Sciple, but Sciple "never would speak to [him]." On cross-examination, Triplett stated that, when he confessed, "all [he] was in jail for was petty larceny and false pretense."

¶18. After Sciple testified briefly in rebuttal, the trial judge asked whether Triplett's trial counsel wished to be heard in argument. Trial counsel stated that he would "just rest on [his] motion." The trial judge then denied Triplett's motion to suppress his confession. The judge's ruling from the bench included a detailed discussion of the testimony and the reasons for his ruling. Specifically, the trial judge found that Triplett knowingly, freely, and voluntarily waived his *Miranda* rights. The judge also found that Triplett's confession was voluntary and that he was not under the influence at the time. At the conclusion of his ruling, the judge asked, "Can y'all think of anything else we need to consider on the record before we get back in front of the jury in this case?" Triplett's trial counsel stated, "No, Your Honor, I don't believe there is."

¶19. After the second suppression hearing, Sciple completed his testimony before the jury, and the State rested its case.[4] Triplett rested without testifying or calling any witnesses. The

---

[4] The only witnesses who testified before the jury were Reverend Hardy, Sciple, and an investigator from the sheriff's department who responded to Hardy's call about a possible burglary at the church.

jury found Triplett guilty of burglarizing the church. The trial judge sentenced Triplett as a nonviolent habitual offender to fourteen years in the custody of the Department of Corrections.[5]

¶20. Triplett filed a motion for a new trial in which he argued, inter alia, that the court erred by "admitting evidence, testimony and a statement from [Triplett] that was gained by an improper search warrant to the premises where [Triplett] was residing, while denying [Triplett the] right to question the search warrant." Triplett's motion for a new trial was denied, and he filed a timely notice of appeal. On appeal, as noted above, Triplett argues that his confession should have been suppressed because it was "obtained by exploitation of his illegal arrest." In response, the State argues that Triplett waived this issue because he did not raise it in the trial court. After examining the record, this Court ordered the State and Triplett's appellate counsel to confer with trial counsel to determine whether any written motion to suppress was filed or provided to the trial judge and whether there was any other ore tenus motion to suppress that is not reflected in the transcript. The State and Triplett's appellate counsel subsequently filed a joint response stating that they had conferred with trial counsel and that there was no written motion or any other oral motion.

**ANALYSIS**

### I.    Confession

---

[5] *See* Miss. Code Ann. § 97-17-33(2) (Rev. 2014) (providing that a conviction for burglary of a church shall be punishable by imprisonment for not more than fourteen years); Miss. Code Ann. § 99-19-81 (Rev. 2015) (providing that any person convicted of a felony as a nonviolent habitual offender "shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation").

¶21. On appeal, Triplett abandons the arguments that he made during the two suppression hearings in the trial court. He no longer challenges the search warrant, the search of the Williamses' SUV, or the voluntariness of his confession. Rather, Triplett argues that he was *arrested* without a warrant and without "probable cause," and he then argues that his "confession was an inadmissible fruit obtained by exploitation of his illegal arrest." The problem with Triplett's argument on appeal is that it he did not make it at trial.

¶22. As discussed above, there were two mid-trial suppression hearings. The only subject of the first hearing was the search of the Williamses' SUV. The only issue addressed or argued during that hearing was whether Triplett even had standing to object to the search of the vehicle. Near the end of that hearing, Triplett's trial counsel briefly mentioned Triplett's arrest and statement, but he did so in connection with the items seized from the SUV. And, more important, when the trial judge asked for clarification, Triplett's trial counsel clearly stated, "[w]e are not there yet." That is, counsel expressly recognized that the first suppression hearing only addressed the search of the SUV, not Triplett's confession.

¶23. Moreover, during the second suppression hearing, Triplett never raised any objection based on an allegedly illegal arrest. Indeed, the circumstances and basis for Triplett's arrest were not addressed at any point during the hearing. Rather, the second hearing focused entirely on the circumstances of Triplett's statement, which he gave a week after his arrest. Triplett claimed that he was high when he confessed, that he told Sciple that the confession was false, and that he later attempted to recant the confession. The point of Triplett's testimony was to suggest that his *Miranda* waiver and confession were not knowing and

10

voluntary. However, the trial judge found otherwise and explained his reasoning in a detailed bench ruling addressing the waiver and the voluntariness of the confession. At the conclusion of the judge's ruling, the trial judge specifically asked whether there was "anything else" that he needed "to consider on the record" before the trial resumed. If Triplett wanted to object to the confession based on an allegedly illegal arrest, that would have been the time to do it. However, his attorney told the court that there were no other issues left to be addressed.

¶24. Finally, Triplett's post-trial motion for a new trial did not argue that his confession was the product of an illegal arrest.[6] Rather, Triplett's new trial motion reasserted that the "search warrant" was improper and that the trial judge erred by finding that he lacked standing to challenge the warrant.

¶25. It is well established that "an objection on one or more specific grounds constitutes a waiver of all other grounds." *Fleming*, 604 So. 2d at 292. "Constitutional arguments not asserted at trial are waived." *Id.* "This Court cannot find that a trial judge committed reversible error on a matter not brought before him or her to consider." *Smith v. State*, 986 So. 2d 290, 295 (¶13) (Miss. 2008). Thus, in *Evans v. State*, 275 So. 2d 83 (Miss. 1973), the Supreme Court held that the defendant "effectively waived" any claim that his arrest was illegal when, as in this case, his only argument at trial was that his confession was involuntary. *Id.* at 85.

---

[6] Although we mention Triplett's new trial motion, "a motion for a new trial is not an opportunity to revive an issue which the party waived by failing to make a contemporaneous objection." *Hughes v. State*, 90 So. 3d 613, 624 (¶26) (Miss. 2012).

11

¶26. The same is true here. At trial, Triplett clearly made a Fifth Amendment-based objection to his confession, arguing that the *Miranda* waiver and confession itself were not voluntary. However, he never alleged that his confession was the product of an illegal arrest. Indeed, the circumstances of his arrest were never discussed during the hearing on the motion to suppress his statement. Accordingly, we hold that Triplett is procedurally barred from raising that issue for the first time on appeal.

¶27. This case is a good illustration of why we do not address issues that were not raised at trial. Because Triplett did not make this argument at trial, there are several underlying or subsidiary factual and legal issues that the record simply does not address. Because there was no evidence or argument on these issues, the trial court likewise did not make any relevant findings or rulings, and this Court is in no position to do so on appeal.

¶28. To begin with, Triplett's argument on appeal simply assumes that he was arrested without a warrant. It is true that there is no mention in the record of an arrest warrant. However, because Triplett never challenged the arrest, there was never a need for the State to explain the basis for the arrest. Moreover, during the second suppression hearing, Triplett testified that when he confessed to Sciple he "was in jail for . . . petty larceny and false pretense." Thus, it is possible that Triplett was arrested and in jail on some unrelated charge at the time he confessed. If Triplett was arrested pursuant to a preexisting and valid warrant on another charge, then the arrest was lawful, *see, e.g.*, *Utah v. Strieff*, 136 S. Ct. 2056, 2062-63 (2016), which would defeat any claim that Triplett's confession was a product of an illegal arrest. We do not know whether there was a warrant in this case because Triplett

12

never raised the issue at trial.

¶29. Moreover, even if we were to assume that Triplett was arrested without a warrant, that still would not answer the question whether the arrest was valid. A police officer can make an arrest without a warrant if he has probable cause to believe (a) that a felony has been committed and (b) that the person to be arrested is the one who committed it. *Woods v. State*, 866 So. 2d 422, 425 (¶10) (Miss. 2003); *Jones v. State*, 993 So. 2d 386, 391-92 (¶10) (Miss. Ct. App. 2008). Probable cause is

> a practical, non-technical concept, based upon the conventional considerations of every day life on which reasonable and prudent men, not legal technicians, act. It arises when the facts and circumstances within an officer's knowledge, or of which he has reasonably trustworthy information, are sufficient to justify a man of average caution in the belief that a crime has been committed and that a particular individual committed it.

*Woods*, 866 So. 2d at 426 (¶11) (quoting *Strode v. State*, 231 So. 2d 779, 782 (Miss. 1970)).

¶30. On appeal, "[w]e apply a 'mixed' standard of review to this issue." *Bondegard v. State*, 81 So. 3d 1181, 1185 (¶12) (Miss. Ct. App. 2011) (quoting *Eaddy v. State*, 63 So. 3d 1209, 1212 (¶11) (Miss. 2011)). We review de novo the question whether there was probable cause for the warrantless arrest. *Id.* (citing *Eaddy*, 63 So. 2d at 1212 (¶11)). However, we review the trial judge's findings regarding the underlying "historical facts . . . under the substantial evidence and clearly erroneous standards." *Id.* (quoting *Eaddy*, 63 So. 3d at 1212 (¶11)).

¶31. In this case, because Triplett did not argue at trial that he was arrested without probable cause, the State was never called upon to articulate the basis for the arrest. Moreover, the trial judge was never called upon to make any findings of fact concerning the

facts and circumstances of the arrest. Nor was the trial judge required to determine whether there was probable cause for the arrest. Thus, there are no relevant findings or rulings for this Court to review on appeal.

¶32. Lastly, even if we were to assume that Triplett was arrested without a warrant *and* without probable cause, that still would not resolve the question whether Triplett's later confession was admissible. "The mere fact that a defendant confesses while in custody following an illegal arrest does not per se render the confession inadmissible." *Henry v. State*, 486 So. 2d 1209, 1213 (Miss. 1986). Rather, the confession is admissible if it is "sufficiently an act of free will to purge the primary taint" of the illegal arrest. *Brown v. Illinois*, 422 U.S. 590, 602 (1975) (quoting *Wong Sun v. United States*, 371 U.S. 471, 486 (1963)). "The question whether a confession is the product of a free will . . . must be answered on the facts of each case. No single fact is dispositive." *Id.* at 603. A proper *Miranda* warning is "an important factor . . . in determining whether the confession [was] obtained by exploitation of an illegal arrest." *Henry*, 486 So. 2d at 1213 (quoting *Brown*, 422 U.S. at 603). "Other *Brown* factors which ought to be considered are (1) the temporal proximity of the arrest and the confession; (2) the presence of intervening circumstances; (3) the purpose and flagrancy of the official misconduct, i.e., the making of the illegal arrest; and (4) any other circumstances that seem relevant." *Id.* (quoting *Hall v. State*, 427 So. 2d 957, 959-60 (Miss. 1983)); *see Brown*, 422 U.S. at 603.

¶33. Thus, if a defendant moves to suppress a confession as an exploitation of an illegal arrest, the trial judge must make findings of fact relevant to these "*Brown* factors," and the

judge must then determine whether the confession was a product of the defendant's "free will" based on the "circumstantial evidence" and the "totality of the circumstances." *See Keller v. State*, 138 So. 3d 817, 851-52 (¶¶79-82) (Miss. 2014). On appeal, we apply a deferential standard of review to the trial judge's findings of fact and ruling. *See id.* at 852 (¶82); *Catledge v. State*, 174 So. 3d 293, 295-98 (¶¶2-10) (Miss. Ct. App. 2015).

¶34. In this case, because Triplett never alleged that his confession was the product of an illegal arrest, the trial judge did not make any findings of fact relevant to the *Brown* factors, other than to note that Triplett received a proper *Miranda* warning prior to his confession. Nor did the trial judge make an ultimate finding as to whether Triplett's confession was a product of his own "free will" despite his (allegedly) illegal arrest. Again, Triplett did not raise the issue, so there is no decision for us to review on appeal.

¶35. In summary, because Triplett did not challenge his arrest in the trial court, the State had no reason to present evidence to show that the arrest was valid.[7] Nor did the State need to show that the confession was admissible under *Brown*'s multi-factor test. In addition, the trial judge had no reason to make findings or fact or conclusions of law regarding the existence of a warrant or probable cause, the circumstances of Triplett's confession, or whether the confession was a product of Triplett's "free will." Accordingly, the record is

---

[7] There is no clear explanation in the record as to why Triplett was arrested. As discussed above, Sciple testified that the sound equipment looked like the type that might be used in a church, but there was no report of a church burglary at the time of Triplett's arrest. Because Triplett failed to raise this issue at trial, the record is insufficient for us to address the issue on appeal. However, our opinion does not preclude Triplett from raising the issue as part of a claim of ineffective assistance of counsel in a properly filed motion for post-conviction relief. *See Battle v. State*, No. 2016-KA-00534, 2018 WL 1805262, at *4 (¶¶17-20) (Miss. Ct. App. Apr. 17, 2018).

insufficient, and there are no relevant findings or rulings for this Court to review on appeal. For these reasons, and consistent with our general rule, Triplett's failure to raise this issue at trial bars him from doing so for the first time on appeal. *Fleming*, 604 So. 2d at 292; *Evans*, 275 So. 2d at 85. Triplett acknowledged his *Miranda* rights before he confessed to the burglary, and there is substantial evidence to support the trial judge's ruling that the confession was voluntary. Therefore, the trial judge did not abuse his discretion in admitting Triplett's confession.

## II.     Sufficiency and Weight of the Evidence

¶36.     Triplett also argues that there was insufficient evidence to support his conviction and that the jury's verdict is against the overwhelming weight of the evidence. When this Court reviews a challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)), *abrogated on other grounds by Little v. State*, 233 So. 3d 288, 291-92 (¶¶14-20) (Miss. 2017).

¶37.     We "review the trial court's decision to grant or deny a new trial for an abuse of discretion." *Little*, 233 So. 2d at 292 (¶21). We must weigh the evidence in the light most favorable to the jury's verdict. *Id.* We will set aside the verdict only if "it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.* "We do *not* make independent resolutions of conflicting

16

evidence . . . , reweigh the evidence[,] or make witness-credibility determinations." *Id.* at

(¶20) (citation omitted). The "credibility of witnesses and the weight and worth of their

testimony" are issues for the jury to decide. *Id.*

¶38.   In part, Triplett argues that the evidence was insufficient to convict him because his

confession should have been suppressed. To that extent, his argument fails for the reasons

already discussed above. Triplett also argues that there was evidence that he falsely

confessed to protect his girlfriend; that his confession was too vague and conclusory to be

considered credible; and that the State failed to prove when the burglary occurred or that

there was an actual "breaking."[8] Finally, Triplett asserts that there was nothing to establish

that he actually or constructively possessed the equipment, only that he was nearby when

police found it.

¶39.   Triplett's weight and sufficiency arguments are without merit. "[R]ecanted or not,"

Triplett's confession that he burglarized the church was "direct evidence" that he burglarized

the church. *States v. State*, 88 So. 3d 749, 757 (¶34) (Miss. 2012). Moreover, Triplett

specifically confessed that he "did break into" the church. Triplett's confession and the other

facts in evidence were sufficient to support the verdict and the conviction.

## CONCLUSION

¶40.   Triplett waived his claim that his confession was "obtained by exploitation of his

illegal arrest" because he did not raise the issue in the trial court, and there is sufficient

---

[8] "[B]reaking and entering" of the church is an essential element of the offense. Miss. Code Ann. § 97-17-33(2). "Any effort, however slight, such as the turning of a door knob to enter, constitutes a breaking . . . ." *Alford v. State*, 656 So. 2d 1186, 1190 (Miss. 1995).

evidence to support the jury's verdict and Triplett's conviction for burglary of a church.

¶41.    **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, GREENLEE AND TINDELL, JJ., CONCUR.  WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**