# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00431-COA

**JDB RENTALS, LLC, AS OWNER OF VERONA RENTALS, LLC**  APPELLANT

**v.**

**CITY OF VERONA, MISSISSIPPI**  APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 01/04/2023 |
| TRIAL JUDGE: | HON. PAUL S. FUNDERBURK |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHRISTOPHER G. EVANS |
| ATTORNEY FOR APPELLEE: | GARY L. CARNATHAN |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | REVERSED AND RENDERED - 07/16/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.     Jeremy Butler and his brother Daniel Butler d/b/a JDB Rentals LLC (JDB), the owner of Verona Rentals LLC, bought about 100 rental properties located in and around Verona, Mississippi.  After Verona's code-enforcement officer notified JDB of his decision to administratively condemn three of its manufactured homes, JDB appealed to Verona's board of aldermen (the Board).  The Board conducted a hearing and subsequently approved the condemnation decision.  JDB then appealed to the Lee County Circuit Court, which affirmed the Board's decision.  Following its unsuccessful motion for reconsideration, JDB appeals.

¶2.     After due consideration, we find that the Board based its decision on information that its code-enforcement officer obtained incident to an unconstitutional search of JDB's

property. Since the exclusionary rule prohibits consideration of that information, the result is a lack of substantial evidence to support the Board's decision. Consequently, we reverse the Board's decision and render judgment in JDB's favor.

## FACTS

¶3.     "In fair Verona, where we lay our scene,"[1] five manufactured homes were located on property accessible by a private road called Young Drive. This appeal focuses on three of those manufactured homes. As of August 2021, West Rentals owned them. On August 27, 2021, Verona's code-enforcement officer, Shane Davis, sent West Rentals a notice of intent to declare the manufactured homes a public nuisance. The notice of intent was not introduced into evidence and, rightly, is not included in the appellate record. But according to Davis's testimony, he "identified that there was some faulty wiring issues like smoke alarms," "general water damage from deferred maintenance[,]" and "[r]oof leaks throughout the development." It is unclear whether the problems Davis identified were equally present in all three of the manufactured homes at issue. Even if Davis took photographs of the three manufactured homes around that time, they were never introduced as evidence, and they do not appear in the record. In any event, the notice of intent purportedly informed West Rentals that it had sixty days to correct the problems to avoid further action.

¶4.     However, in October 2021, West Rentals sold the manufactured homes to JDB, which ultimately purchased approximately 100 rental properties in and around Verona. Before JDB bought the manufactured homes, one of the Butler brothers asked Davis whether there were

---

[1] William Shakespeare, *Romeo and Juliet* act 1, prologue.

2

any major issues with the homes. Davis essentially told them that some of them needed repairs, but Davis did not tell anyone with JDB that he had issued the August 27, 2021 notice of intent to condemn the manufactured homes. More precisely, Davis said that he "did not engage in full disclosure with them." Davis chose not to disclose that information to JDB "because of the possibility of pending litigation with . . . West on the matter."

¶5.     Nevertheless, on December 14, 2021, someone with JDB went to the city clerk's office and, at JDB's request, obtained a copy of the August 27, 2021 notice of intent. The clerk told Davis about JDB obtaining a copy. According to Davis, he unilaterally restarted the sixty-day deadline at that time, but he never discussed his decision with JDB or informed JDB of his new, unofficial deadline.

¶6.     On March 9, 2022, Davis returned to the Young Drive property to inspect the manufactured homes again. Although Davis did not have JDB's permission to enter onto the property, Davis explained that he did not go inside the manufactured homes. When specifically asked, however, he admitted he "was upon the property" when he performed his second inspection. During the hearing before the Board, Davis said that "one of the mobile homes had some roofing issues[,]" and he saw "[d]ecks and so forth that were in a dilapidated state[,] as well as [s]kirting, inadequate trash collection[,] . . . and most noticeably, several of the units appeared to be vacant." Later, Davis added that there were "some electrical issues in there[,] [s]ome substandard wiring[,] . . . plumbing problems in a few of those units as well as some roof leaks[,] . . . and what appeared to be black mold[-]like substances here and there, primarily in the kitchen area under the cabinet . . . and . . . just

3

general wood rot." Altogether, Davis saw "no evidence to suggest that there had been any work or alterations from when [he] had been there the previous August." Again, Davis did not explain whether the problems he listed were equally present in all three of the manufactured homes at issue, and no photographs of the manufactured homes were introduced into evidence.

¶7. On March 11, 2022, Davis sent JDB notice of his decision to administratively condemn the three manufactured homes. Again, the notice was not introduced into evidence, so it does not appear in the record. Nevertheless, the notice purportedly informed JDB that it had ninety days to remove or demolish the manufactured homes "or that a hearing shall be held pursuant to [section] 21-19-11 to remove the structures." The notice also purportedly informed JDB of its right to appeal to the Board.

¶8. As previously mentioned, JDB appealed to the Board, which conducted a hearing on May 24, 2022. After Davis testified, Jeremy Butler testified for JDB. Jeremy's testimony will be discussed later in the opinion. The Board ultimately upheld the decision that the manufactured homes must be demolished or removed from the property. On June 7, 2022, the Board issued its written "finding of facts." The Board based its decision on the problems that Davis discussed and its conclusion that the manufactured homes had been vacant for at least three months.[2]

---

[2] The Board noted that section 9.1.2(F) of Verona's zoning ordinance provides:

[I]f active use or operation of a non-conforming manufactured or mobile home is discontinued for three (3) months or more, then the use of the mobile or manufactured home shall be automatically deemed abandoned and shall be removed from the property promptly, and no mobile or manufactured home

4

¶9. Next, JDB appealed to the circuit court.[3] The circuit court affirmed the Board's decision. In so doing, the circuit court held that although Davis did not have permission to go onto JDB's property on March 9, 2022, his testimony about the problems he saw was admissible based on the plain-view doctrine (i.e., because the problems were in plain view). The circuit court also noted that although the City had never expressly relied on the plain-view doctrine, the City "quite clearly invokes the doctrine." After filing an unsuccessful motion for reconsideration, JDB appeals.

¶10. According to JDB, the Board's decision must be reversed because (1) the condemnation decision was based on information that Davis obtained incident to an unconstitutional search; (2) the hearing before the Board was inherently unfair; and (3) the Board's decision was arbitrary and capricious. We agree with JDB's first assertion and, because it is outcome-determinative, there is no need to discuss JDB's other arguments on appeal.

**STANDARD OF REVIEW**

¶11. This Court has "appellate jurisdiction to review decisions of county boards of

___

may again be placed on the said property without prior approval of the Board of Alderman.

[3] The circuit court entered a scheduling order setting briefing deadlines and directing JDB to file a transcript of the hearing before the Board. The circuit court also directed the City to submit "any supporting documents" along with its responsive brief. The parties do not take issue with the fact that they provided the circuit court with all the materials that were considered at that stage of the case. Even so, we note that the procedure did not comply with Mississippi Code Annotated section 11-51-75(c) (Rev. 2019). *See J&A Excavation Inc. v. City of Ellisville*, 371 So. 3d 199, 203 n.1 (Miss. Ct. App. 2023) (discussing the requisite method of compiling the record incident to an appeal of a decision by a municipality or a board of aldermen to a circuit court).

supervisors and municipal governing boards." *J&A Excavation Inc. v. City of Ellisville*, 371 So. 3d 199, 205 (¶19) (Miss. Ct. App. 2023). We apply "the same standard of review applied by the circuit court." *Id.* Under our limited scope of appellate review,

> we will not set aside the action of the governing body of a municipality unless such action is clearly shown to be arbitrary, capricious, or discriminatory or is illegal or without substantial evidentiary basis. An act is arbitrary and capricious when it is done at pleasure, without reasoned judgment or with disregard for the surrounding facts and circumstances. Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion or more than a mere scintilla of evidence.

*Id.* (quoting *Rod Cooke Constr. Co. v. Lamar Cnty. Sch. Bd.*, 135 So. 3d 902, 906 (¶5) (Miss. Ct. App. 2013)).

## DISCUSSION

### I.    The Board improperly relied on evidence obtained incident to an unconstitutional search.

¶12.    On appeal, JDB reiterates its argument that the Board erred when it condemned the three manufactured homes based on Davis's March 9, 2022 observations. JDB notes that Davis did not have its permission to enter the property on that date, so any information he obtained at that time must be subject to the exclusionary rule (i.e., excluded from the evidence). JDB further argues that the City is procedurally barred from relying on the plain-view doctrine because the City did not assert it before the Board or the circuit court.

¶13.    Article 3, Section 23 of the Mississippi Constitution provides that "[t]he people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search . . . ." The government's warrantless administrative search of property without the property owner's consent for the purposes of condemnation proceedings is unconstitutional.

*Okhuysen v. City of Starkville*, 333 So. 3d 573, 584 (¶¶30-32) (Miss. Ct. App. 2022). "[T]he primary question under Section 23 is whether the official who conducted the search committed a 'trespass' in going on the lands of the defendant." *Id*. at 581 (¶23) (other internal quotation mark omitted). It is undisputed that Davis did not have JDB's permission to enter the property to conduct the March 9, 2022 inspection. At the hearing before the Board, JDB's attorney specifically asked Davis whether he conducted that inspection "from the roadway or . . . upon the property[.]" Davis answered, "I was upon the property." In fact, Davis testified that "it's difficult to see the property through a routine patrol." There was no testimony that Davis observed any of the problems that led to his condemnation decision from anywhere other than "upon the property."

¶14.    The plain-view doctrine was never expressly or even implicitly discussed during the proceedings before the Board. In its brief to the circuit court, the City's entire argument regarding Davis's search of the property follows:

> There is no testimony in this record that Mr. Davis went on and into the trailers on [JDB's] property on Young Drive. The only testimony in this regard is that Mr. Davis did a visual inspection which revealed that [JDB was] doing no work on the three trailers in question. His actions were not in violation of Article 3, Sec. 23 of the Mississippi Constitution and this issue is not supported by substantial evidence and should be denied.

At best, the City barely invoked the subject without citing any authority for it. But the fact remains that the City did not rely on the plain-view doctrine during the proceedings before the Board. *Triplett v. State*, 264 So. 3d 808, 816 (¶¶27-28) (Miss. Ct. App. 2018) (explaining that "we do not address issues that were not raised at trial" because it deprives the parties of an opportunity to make a record on those issues). Even assuming for the sake of discussion

7

that the City could raise the issue for the first time on appeal to the circuit court or here, there was simply no evidence to support the doctrine.

¶15. Because Davis's March 9, 2022 inspection was based on an unconstitutional search of JDB's property, the information that he obtained incident to that inspection is subject to the exclusionary rule. *Okhuysen*, 333 So. 3d at 589 (¶44). Thus, the "evidence that the City obtained in violation of [JDB's] rights . . . should not have been admissible and used against [JDB]." *Id.* Accordingly, the Board erred when it relied on the information that Davis obtained incident to his March 9, 2022 inspection.

## II.     There is not substantial evidence to support the Board's decision.

¶16. Even with the information that Davis provided based on his March 9, 2022 inspection, the evidence to support the Board's decision was already scant. There were no photographs of the manufactured homes, and it was unclear whether Davis's description of the problems that he saw applied equally to all three manufactured homes. In any event, the information that Davis provided based on his search must be excluded from consideration. The only remaining discussion regarding the condition of the manufactured homes was provided by Jeremy.

¶17. According to the Board's written "finding of facts," Jeremy "confirmed that no work ha[d] been performed at the Young site since [JDB] purchased the property in [m]id-October" 2021. But that is an incomplete representation of Jeremy's testimony during the hearing before the Board. When the City's attorney asked Jeremy what JDB did "from October [2021] to March 11[, 2022,] to fix up these pieces of property," Jeremy answered,

8

"I don't know that we did any repairs to that particular property. We were working at other properties during that time but I don't know that we did any to these five properties." Jeremy also answered affirmatively after the City's attorney represented that it did not "take a brain scientist to walk out there and look at the place and see it needs some work done on it."

¶18. Jeremy did not unequivocally say that no work had been performed on the three manufactured homes at issue. In addition, we note that JDB did not have the burden to prove that the manufactured homes should not be condemned. Instead, the City had the burden to prove that they should be condemned. *See Miss. State Highway Comm'n v. Hillman*, 189 Miss. 850, 198 So. 565, 568 (1940) ("The party who has the burden of proof may be determined by considering which would succeed if no evidence was offered, and by examining what would be the effect of striking out of the record the allegations to be proved. The onus must be on the party who, under such test, would fail."); *cf. City of Biloxi v. Hilbert*, 597 So. 2d 1276, 1280 (Miss. 1992) (clarifying burdens). Thus, the City had to prove that the property was "in such a state of uncleanliness as to be a menace to the public health, safety and welfare of the community . . . ." Miss. Code Ann. § 21-19-11(1) (Supp. 2021). As previously mentioned, Davis's August 2021 inspection revealed "some faulty wiring issues like smoke alarms," "general water damage from deferred maintenance[,]" and "[r]oof leaks throughout the development." Even if we interpret Butler's testimony to mean that JDB had not corrected some unspecified "wiring issues like smoke alarms," general water damage, or roof leaks, there is not substantial evidence to conclude that those issues amount to a state of uncleanliness to be menaces to public health, safety, or welfare.

¶19. As for the Board's condemnation of the three manufactured homes based on section 9.1.2(F) of the City's zoning ordinance, it is only applicable "if active use or operation of a non-conforming manufactured or mobile home is discontinued for three (3) months or more . . . ." That section does not apply to any vacant mobile home. Instead, it applies to a vacant "non-conforming manufactured or mobile home." There has been no discussion or argument regarding the definition of a "non-conforming" manufactured home. Substantial evidence is "such relevant evidence as reasonable minds might accept as adequate to support a conclusion or to put it simply, more than a mere scintilla of evidence." *Hall v. City of Ridgeland*, 37 So. 3d 25, 36 (¶33) (Miss. 2010) (internal quotation marks omitted). Since there is no evidence that the manufactured homes are "non-conforming," there is not a substantial basis to conclude that the manufactured homes at issue fall under that definition.[4] It necessarily follows that there is not substantial evidence to support the Board's decision that JDB must demolish the manufactured homes or remove them from the Young Drive property.

**CONCLUSION**

¶20. The City's code-enforcement officer obtained the information that led to the Board's

---

[4] "It is a doctrine not to be tolerated in this country, that a municipal corporation, without any general laws either of the city or of the State, within which a given structure can be shown to be a nuisance, can, by its mere declaration that it is one, subject it to removal by any person supposed to be aggrieved, or even by the city itself. This would place every house, every business, and all the property of the city, at the uncontrolled will of the temporary local authorities." *Yates v. City of Milwaukee*, 77 U.S. 497, 505 (1870); *see also Albert v. City of Mountain Home*, 337 P.2d 377, 380 (Idaho 1959) ("To be lawfully destroyed as a nuisance, a building must be a nuisance per se or in fact. If it is neither, it cannot be made a nuisance by declaration of the city council.").

condemnation decision incident to an unconstitutional search of JDB's property. Consequently, that information is subject to the exclusionary rule and must not be considered. Without that information, there is not substantial evidence to support the Board's decision to declare the property a public nuisance and order JDB to demolish the three manufactured homes or remove them from its property. Likewise, there is not substantial evidence to support the Board's decision that the manufactured homes must be removed from the property based on the City's zoning ordinance. As a result, we reverse the circuit court's order and the Board's decision and render judgment in favor of JDB.

¶21. **REVERSED AND RENDERED.**

**BARNES, C.J., WILSON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR. CARLTON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

11